129 F.3d 710
 UNITED STATES of America, Appellee,
v.
Ramon TORRES, a.k.a. "Weechie"; Jason Roman; John Arias,
a.k.a. "Gotta"; Rafael Lopez, a.k.a. "Fish"; Miguel Ramos,
a.k.a. "Andy"; Ernesto Rosa, a.k.a. "Nest"; Carmella
Martinez, a.k.a. "Garganey"; Missel Ortega, a.k.a.
"Guinea"; Edgar Torres, a.k.a. "Pachouli"; Edward
Blancaneaux, a.k.a. "Sexy"; Jose Oppenheimer, a.k.a.
"Mongo"; Carlos Reynosa; LNU1-94CR0466-015, a.k.a. "Ed", Defendants,
Luciano Lopez, a.k.a. "Tito"; Jesus A. Ramos, a.k.a.
"Tone"; Eric Mendez, a.k.a. "Papa Head Eric";
and Franklin Grullon, a.k.a. "Frankie",
Defendants-Appellants.
 Nos. 925, 1231, 1944, 1945, Dockets96-1490, 96-1595,96-1746,
96-1833.
 United States Court of Appeals,
Second Circuit.
 Nov. 17, 1997.
 
 Alexandra A. Shapiro, Assistant United States Attorney, Southern District of New York, New York City for plaintiff-appellee.
 Mark J. Stein, Fried, Frank, Harris, Shriver & Jacobson, New York City for defendant-appellant Luciano Lopez.
 Austin V. Campriello, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City for defendant-appellant Jesus A. Ramos.
 Marvin E. Schechter, New York City for defendant-appellant Franklin Grullon.
 Roger J. Schwarz, Law Office of Roger J. Schwarz, New York City for defendant-appellant Eric Mendez.
 Before: VAN GRAAFEILAND, McLAUGHLIN, Circuit Judges, and POLLACK, District Judge.*
 MCLAUGHLIN, Circuit Judge:
 
 
 1
 Luciano Lopez, Jesus A. Ramos, Eric Mendez and Franklin Grullon appeal from convictions in the United States District Court for the Southern District of New York (Keenan, J.). After pleading guilty to various counts of engaging in a pattern of racketeering activity involving murders, extortions, and other acts of violence they now appeal on sundry grounds. We reject all their arguments and, therefore, affirm.
 
 BACKGROUND
 
 2
 The "Head Crackers" was an appropriately named street gang, operating principally in the Bronx, New York. It engaged in armed robberies, carjackings, extortions, and other acts of violence. In May 1994, the "Head Crackers" merged with the "Willis Avenue Lynch Mob," another violent street gang whose members were known for narcotics trafficking and extortions. Together the two groups were called HC/WALM.
 
 
 3
 The two gangs merged to take over "rent" collections from a third gang known as C & C. For years, C & C had extracted weekly "rent" payments from drug dealers who sold narcotics on C & C turf. If a dealer refused to pay, C & C would ban the dealer. C & C, and its successor, HC/WALM, enforced control over "rent" collections through acts of violence, including murder. Eric Mendez, Jesus A. Ramos, Franklin Grullon and Luciano Lopez were all members of HC/WALM.
 
 
 4
 Examples of HC/WALM's brutality included the murder of Raul Caraballo, a member of C & C who had been entrusted with collecting the "rent" payments from drug dealers. In order to complete their takeover of "rent" payments, HC/WALM members shot Caraballo several times in the head. HC/WALM members also conspired to murder Angel Montalvo, a local heroin dealer whom they viewed as a threat to HC/WALM's operation. Montalvo was shot and killed as he walked into his girlfriend's apartment building in the Bronx.
 
 
 5
 In July 1994, Ramos, Mendez, Lopez and Grullon, as well as other members of HC/WALM, were indicted in the United States District Court for the Southern District of New York (Keenan, J.). They were charged with numerous counts of engaging in a pattern of racketeering activity involving murders, extortions, armed robbery, and firearms violations. All defendants were charged with participating in the conduct of the affairs of a racketeering enterprise, in violation of RICO, 18 U.S.C. § 1962(c) and with conspiring to conduct and participate in the affairs of such enterprise, in violation of 18 U.S.C. § 1962(d).
 
 
 6
 Individually, Ramos was also charged with: (1) participating in 18 of 35 predicate acts of racketeering enumerated in the indictment; (2) conspiracy to murder and murder in aid of racketeering, in violation of 18 U.S.C. § 1959; (3) conspiracy to commit extortion and extortion, in violation of 18 U.S.C. § 1951; and (4) using and carrying a firearm during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(c).
 
 
 7
 Mendez was charged with: (1) participating in two predicate acts of racketeering; (2) conspiracy to murder, attempted murder and murder in aid of racketeering, in violation of 18 U.S.C. § 1959; and (3) using and carrying a firearm during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(c).
 
 
 8
 Grullon was charged with: (1) participating in two predicate acts of racketeering; (2) conspiracy to commit robbery and robbery, in violation 18 U.S.C. § 1951; and (3) various related firearms offenses. Grullon was also charged in a separate indictment with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.
 
 
 9
 Lopez was charged with: (1) participating in 31 predicate acts of racketeering; (2) murder and violent crimes in aid of racketeering, in violation of 18 U.S.C. § 1959; (3) robbery and extortion, in violation of 18 U.S.C. § 1951; (4) carjacking, in violation of 18 U.S.C. § 2119 and (5) use of firearms during and in relation to crimes of violence, in violation of 18 U.S.C § 924(c).
 
 
 10
 Prior to trial, Lopez and Grullon moved to dismiss the indictment on the ground that the charges under 18 U.S.C. § 1959 exceeded Congress's power to regulate commerce under United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Judge Keenan denied the motion holding that, because 18 U.S.C. § 1959 expressly requires proof that the offense substantially affects interstate commerce, there was no constitutional infirmity.
 
 Ramos
 
 11
 On August 16, 1995, the government agreed to accept a guilty plea from Ramos to a two-count superseding indictment charging him with conspiracy to murder and conspiracy to assault with a dangerous weapon. On April 29, 1996, almost nine months after pleading guilty, Ramos moved to withdraw his guilty plea. The district court denied the motion and sentenced Ramos to 13 years' imprisonment.
 
 Grullon
 
 12
 On August 30, 1995, Grullon pled guilty, pursuant to a written agreement with the government, to conspiracy to commit robbery involving assault with a dangerous weapon and using the telephone to converse with a coconspirator about the distribution of cocaine.
 
 
 13
 During Grullon's plea allocution, the district court established that Grullon understood the charges against him, and was aware of his right to plead not guilty, to proceed to trial, and to be represented by counsel throughout his trial. The court also confirmed that Grullon had discussed the plea agreement with his attorney and that his plea was voluntary.
 
 
 14
 On December 8, 1995, more than three months after his guilty plea, Grullon filed a letter motion to withdraw his guilty plea and to have his attorney replaced. In his application, Grullon alleged that his lawyer forced him to plead guilty and that she provided him with constitutionally ineffective assistance. The court reluctantly discharged Grullon's lawyer and appointed new counsel, Grullon's third attorney.
 
 
 15
 On April 11, 1996, over seven months after he pleaded guilty, Grullon filed a formal motion to withdraw his guilty plea, asserting that he was not guilty and that his guilty plea was the result of "extreme psychological and mental pressure."
 
 
 16
 The district court denied Grullon's motion, finding that Grullon's claims were "belied by the record." The court found that Grullon's plea was entirely voluntary and his claims regarding his former attorney were baseless. The court also found that an evidentiary hearing was unnecessary because Grullon's allegations "merely contradict[ed] the record, [were] inherently incredible, or [were] simply conclusory."
 
 
 17
 On September 6, 1996, at Grullon's insistence, the district court relieved Grullon's third lawyer and appointed yet another attorney. On October 8, 1996, Grullon filed a second motion to withdraw his guilty plea. In his second motion, Grullon alleged that his prior motion to withdraw his guilty plea was also the product of ineffective assistance of counsel on the part of his third attorney. Judge Keenan denied the motion. On December 18, 1996, Judge Keenan sentenced Grullon to seven years' imprisonment
 
 Mendez
 
 18
 In August 1995, Mendez pled guilty, pursuant to a written plea agreement, to conspiracy to murder and using and carrying a firearm during and in relation to a conspiracy to murder.
 
 
 19
 At the plea allocution, the district court ascertained that Mendez understood the plea agreement, had reviewed it with his attorney before signing it, and had no questions of the court regarding the agreement.
 
 
 20
 By pro se letter dated November 28, 1996, Mendez indicated that he too wished to withdraw his guilty plea. The district court discharged Mendez's attorney and appointed new counsel. Thereafter, on August 16, 1996, one year after entering his guilty plea, Mendez filed a formal motion to withdraw his guilty plea. Mendez contended that he was innocent and that his plea was not voluntary. In addition, on October 10, 1996, Mendez's new attorney moved for production of 16 tape recordings of Mendez's telephone conversations from the Metropolitan Correction Center, which the government had obtained and had already made available to Mendez's previous attorney before Mendez's guilty plea. Judge Keenan denied the motion and sentenced Mendez to 15 years' imprisonment
 
 Lopez
 
 21
 In August 1995, Lopez pled guilty to conspiracy to murder in aid of racketeering activity, conspiracy to assault with a dangerous weapon in aid of racketeering activity and possession with intent to distribute a controlled substance. At the plea allocution, the district court ensured that Lopez understood the charges against him and had reviewed the plea agreement with his attorney.
 
 
 22
 In March 1996, Lopez moved to withdraw his guilty plea claiming that he had been pressured into pleading guilty by his family and attorney. The district court denied the motion and sentenced Lopez to 17 years' imprisonment.
 
 
 23
 Mendez, Grullon, Ramos and Lopez now appeal. Mendez and Grullon argue that the district court abused its discretion when it denied their motions to withdraw their guilty pleas. Ramos claims that the statute under which he was convicted, 18 U.S.C. § 1959, violates the Commerce Clause. Lopez's attorney filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) asking to be relieved as counsel and arguing that Lopez's case presents no nonfrivolous issues on appeal. Lopez has not filed a pro se brief in support of his appeal. The government seeks summary affirmance of Lopez's conviction.
 
 DISCUSSION
 
 24
 A. Grullon's and Mendez's Motions to Withdraw Guilty Pleas
 
 
 25
 Motions to withdraw guilty pleas before sentencing are governed by Federal Rule of Criminal Procedure 32(e). See United States v. Reyes, 13 F.3d 638, 639 (2d Cir.1994). Although Rule 32(e) provides that a defendant may move to withdraw a guilty plea upon a showing of a "fair and just reason," it is basic that "[a] defendant has no absolute right to withdraw his guilty plea." United States v. Williams, 23 F.3d 629, 634 (2d Cir.1994). The defendant bears the burden of demonstrating valid grounds for relief. See United States v. Maher, 108 F.3d 1513, 1529 (2d Cir.1997). In determining whether a "fair and just reason" exists to justify withdrawal of a guilty plea, a district court should consider: (1) the time lapse between the plea and the motion; and (2) whether the government would be prejudiced by a withdrawal of the plea. Fed.R.Crim.P. 32(e), Advisory Committee Notes. However, the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea. Maher, 108 F.3d at 1529.
 
 
 26
 To get permission to withdraw a guilty plea, a defendant must raise a significant question about the voluntariness of the original plea. See Id. A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea. Id.
 
 
 27
 The decision to allow a guilty plea to be withdrawn is committed to the discretion of the district judge, see United States v. O'Hara, 960 F.2d 11, 14 (2d Cir.1992), and is reviewed for an abuse of discretion. See Williams, 23 F.3d at 635.
 
 
 28
 A motion to withdraw a guilty plea may be denied without a hearing where the defendant's allegations "merely contradict the record," are "inherently incredible," or are "simply conclusory." United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir.1992).
 
 Grullon's First Motion to Withdraw
 
 29
 Grullon argues that his first motion to withdraw the guilty plea should have been granted because he was coerced by his attorney into pleading guilty and because his attorney was ineffective when she failed to call witnesses at a pretrial suppression hearing. The district court did not abuse its discretion by denying Grullon's first motion.
 
 
 30
 A review of the record indicates that Grullon's plea was completely voluntary and knowing. During his plea, he was explicitly asked by the district court judge whether anyone forced him to accept this arrangement, to which he responded no. Grullon was given every chance by the district court to raise any concerns, questions or anxieties about the plea. Grullon also waited over seven months to move formally to withdraw his plea. Considering that statements at a plea allocution carry a strong presumption of veracity, see Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), and that his unequivocal admissions under oath contradict his unsupported assertions of pressure, the district court did not abuse its discretion in denying Grullon's motion. See Gonzalez, 970 F.2d at 1101.
 
 
 31
 We decline to address Grullon's argument that his counsel was constitutionally ineffective by failing to interview and call certain witnesses at a pretrial suppression hearing. A defendant who "pleads guilty unconditionally while represented by counsel may not assert independent claims relating to [the deprivation of constitutional rights that occurred] prior to the entry of the guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir.1996). Rather, a defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards ... " Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).
 
 
 32
 In addition, the district court's decision to deny Grullon's motion without an evidentiary hearing was not an abuse of discretion. We discern no reason to disturb the district court's conclusion that Grullon's clear and knowing plea allocution and his extreme delay in making the motion demonstrate that an evidentiary hearing was unnecessary. See United States v. Clements, 992 F.2d 417, 419 (2d Cir.1993); United States v. Saft, 558 F.2d 1073, 1082 (2d Cir.1977). Additionally, Grullon's allegations merely contradicted the record, and this does not require an evidentiary hearing. See Gonzalez, 970 F.2d at 1100.
 
 Grullon's Second Motion
 
 33
 Grullon argues that the district court again abused its discretion when it denied his second motion to withdraw his guilty plea on the ground that his third attorney was constitutionally ineffective. Specifically, Grullon is dissatisfied with an affidavit that counsel filed in support of his motion. Grullon cavils that the affidavit was not as detailed as those submitted by Grullon himself. Again, this claim is without merit.
 
 
 34
 To allege a successful ineffective assistance of counsel claim a defendant must show that: (1) counsel's performance was unreasonably deficient under prevailing professional standards, and, (2) but for counsel's unprofessional errors, there exists a reasonable probability that the result would have been different. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2067, 80 L.Ed.2d 674 (1984).
 
 
 35
 Grullon cannot satisfy either of these requirements. Grullon's counsel's actions did not fall below a reasonable level of competence. The district court found that counsel's papers on the first motion were "competent and well drafted." Grullon's counsel submitted motion papers in support of Grullon's motion to withdraw his guilty plea that included (1) a four-page declaration by counsel; (2) a 20-page affidavit by Grullon prepared by counsel; (3) a 16-page supplemental affidavit by Grullon prepared by Grullon and (4) a 12-page Memorandum of Law prepared by counsel. Grullon's counsel's papers in support of the motion were thorough, well written and sufficiently detailed. Even if counsel's performance were unreasonably deficient, Grullon has offered no evidence that, but for counsel's deficiency, the result would have been different. Grullon fails to demonstrate that his plea was not knowing and voluntary and fails to allege any other grounds justifying withdrawal of his plea.
 
 Mendez's Motion
 
 36
 Mendez argues that the district court abused its discretion by denying his motion to withdraw his guilty plea. Mendez contends that his plea was involuntary because he decided to plead guilty out of fear his counsel was unprepared to go to trial. By the standards set out above, Mendez's claim also fails.
 
 
 37
 Judge Keenan correctly refused to credit Mendez's claim of involuntariness in light of Mendez's statements at the plea hearing that he faced no pressure or force, coupled with his complete failure to raise any concerns with the Court about the quality of his counsel or his counsel's preparedness for trial. During his plea allocution, Mendez answered no when specifically asked whether he had been coerced, pressured, or forced to plead guilty. The district court explicitly told Mendez to take his time, that the court was in no hurry and that he should not hesitate to raise any questions or concerns with the court. There is also no evidence that Mendez's counsel was unprepared for trial. Before Mendez's plea, his counsel had filed motions seeking to dismiss the charges, to suppress Mendez's post-arrest statement, for a severance and for a bill of particulars. At Mendez's suppression hearing, his counsel thoroughly cross-examined government witnesses.
 
 
 38
 In addition, Judge Keenan's decision to rule on Mendez's motion to withdraw his plea without an evidentiary hearing was not an abuse of discretion. Like his codefendants, Mendez offered merely contradictory statements to his plea allocution and no further support, hardly enough to require an evidentiary hearing. See Gonzalez, 970 F.2d at 1100.
 
 
 39
 Lastly, Mendez argues that the district court committed error by refusing to order the government to produce 16 recorded telephone conversations made by Mendez. Mendez argues that these tapes may have contained exculpatory statements made by Mendez that might have led his counsel to further witnesses. This argument is without merit.
 
 
 40
 The tapes requested by Mendez had already been provided to Mendez's former attorney; and there is no evidence that the tapes contained any exculpatory material. Moreover, even if the tapes might have led counsel to discover additional witnesses, Mendez, as a participant in the conversations, would have already known of such witnesses. It is well settled that evidence "is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence." United States v. Gonzalez, 110 F.3d 936, 944 (2d Cir.1997).
 
 B. Ramos' Commerce Clause Claim
 
 41
 Ramos launches an attack on 18 U.S.C. § 1959, contending that it is unconstitutional on its face as a violation of the Commerce Clause.
 
 
 42
 Article I, Section 8 of the U.S. Constitution authorizes Congress "to regulate Commerce ... among the several States." The Commerce Clause empowers Congress to regulate or prohibit "activities that substantially affect interstate commerce," even if the activity is purely local. Lopez, 514 U.S. at 558, 115 S.Ct. at 1630.
 
 
 43
 The substantial effect requirement is satisfied when criminal statutes contain a jurisdictional element, which ensures through case-by-case inquiry, that the prohibited act affects interstate commerce. See id. at 561, 115 S.Ct. at 1631; United States v. Bass, 404 U.S. 336, 348-49, 92 S.Ct. 515, 522-23, 30 L.Ed.2d 488 (1971).
 
 
 44
 Section 1959 satisfies the substantial effect requirement. Section 1959 incorporates a jurisdictional element requiring a nexus between the offense in question and interstate commerce. See Lopez, 514 U.S. at 559-62, 115 S.Ct. at 1630-31. Specifically, § 1959 prohibits the commission of a violent crime "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity," and defines "enterprise" as an entity which is "engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(a) & (b)(2). Because Ramos' constitutional challenge is facial only, we see no need to address the facts of Ramos' case to ascertain whether § 1959 is constitutional, as applied.
 
 C. Lopez's Anders Motion
 
 45
 In order to be relieved pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), an appellant's counsel must conscientiously examine the case, identifying any issues that could arguably be raised on appeal. See McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 438-39, 108 S.Ct. 1895, 1901-02, 100 L.Ed.2d 440 (1988). This Court will not grant an Anders motion unless it is satisfied that (1) "counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal" and (2) "defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct." United States v. Burnett, 989 F.2d 100, 104 (2d Cir.1993).
 
 
 46
 We grant counsel's Anders motion and the government's motion for summary affirmance because we believe that Lopez's case presents no non-frivolous issues for appeal. Counsel's Anders brief addresses Lopez's plea allocution and sentence, as well as the argument that § 1959 violates the Commerce Clause. Counsel correctly concludes that none of these events present any non-frivolous issues for appeal.
 
 
 47
 We have considered all of appellants' additional arguments and find them to be without merit.
 
 
 48
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation