## UNITED STATES of America

v.

## Amaury PIRIS.

## Criminal Case No. 3:06cr269 (MRK).

United States District Court,
D. Connecticut.

Feb. 5, 2009.

Kevin J. O'Connor, Peter D. Markle, U.S. Attorney's Office, New Haven, CT, S. Dave Vatti, Robert M. Spector, U.S. Attorney's Office, Hartford, CT, for United States of America.

### RULING AND ORDER

MARK R. KRAVITZ, District Judge.

Currently pending before the Court is Defendant Amaury Piris's Motion to Withdraw the Defendant's Guilty Plea [doc. # 1046]. The Court held a hearing on the motion on November 21, 2008 [docs. # 1139, 1155], which was continued to December 23, 2008 [doc. # 1157].[1] For the

1. After the hearings on the motion, Mr. Piris filed several letters with the Court in which he reiterated his position that he is not guilty of the charge to which he pled. *See* Response by Amaury Piris [doc. # 1167]; Reply by Amaury Piris [doc. # 1199]. The Government filed two supplemental memorandums in response to Mr. Piris's letters. *See* Supp. Mem.

reasons that follow, the Court DENIES the Motion to Withdraw the Defendant's Guilty Plea [doc. # 1046].

## I.

Mr. Piris was originally indicted on October 4, 2006 on a single count of conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Mr. Piris was appointed an experienced CJA attorney, David Wenc, and he was arraigned, during which Mr. Piris was informed of the charges against him, including the fact that the charge carried a mandatory minimum sentence of ten years imprisonment.

Thereafter, Mr. Wenc began to prepare for trial, and he ultimately moved to suppress wiretaps of Mr. Piris's conversations with his alleged supplier, Mr. Andrade. *See* Motion to Suppress Interception of Wire Communications [doc. # 380]. In or about early August 2007, the Government revised its plea offering to Mr. Piris because it was concerned that it may have double counted certain of his drug transactions. Rather than more than five kilograms originally charged, the Government offered Mr. Piris a plea deal involving between two and one-half to three kilograms of cocaine. Reducing the amount of drugs involved reduced the mandatory minimum from ten years to five years. Mr. Wenc conveyed the Government's new offer to Mr. Piris, who said he would think about it.

On August 28, 2007, Magistrate Judge Donna Martinez held a bond violation hearing and at the conclusion of the hearing, the Magistrate Judge revoked Mr. Piris's release. Two days later, Mr. Piris

appeared before this Court and entered a plea of guilty to a substitute information charging him with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. That charge carried a mandatory minimum sentence of five years.

At the change of plea hearing, Mr. Piris was represented by Mr. Wenc. Mr. Piris was placed under oath, and the Court conducted a comprehensive Rule 11 hearing that lasted nearly forty-five minutes. *See* Transcript [doc. # 1012]. During the Rule 11 colloquy, Mr. Piris stated that he was focused and that his mind was clear. As he put it, "[F]or the last two, three days with no medication, I've been feeling a lot better, even though I'm incarcerated." *Id.* at 6. To the Court's question, "[I]s you mind clear now?", Mr. Piris responded twice that it was. *See id.* at 6–7 (Q. "So your mind's clear? A. Perfectly fine."). The Court asked Mr. Piris if he had read the substitute information and was told that he had. When asked whether he was satisfied with Mr. Wenc's representation, Mr. Piris stated, "Very satisfied."

The Court reviewed the rights Mr. Piris would be waiving by pleading guilty, the statutory penalties, including the mandatory minimum, and his plea agreement with the Government, which contained a Guidelines calculation based on a quantity of between two to three and one-half kilograms of cocaine. The plea agreement erroneously recited that the charge carried a ten-year mandatory minimum, which was for the original charge. That error was corrected on the plea agreement, changing the mandatory minimum to five years.

in Opp'n to Mot. to Withdraw Guilty Plea [doc. # 1177]; Second Supp. Mem. in Opp'n to Mot. to Withdraw Guilty Plea [doc. # 1203]. After careful consideration, the

Court sees nothing in Mr. Piris's letters that gives the Court a reason to reconsider the conclusions stated herein.

Mr. Piris initialed the change. He responded that he fully understood the rights he would be giving up, the consequences of pleading guilty, and the commitments in the plea agreement.

The Court then went over the elements of the offense to which Mr. Piris was pleading guilty, which included the fact that the amount of cocaine that was the subject of the conspiracy was 500 grams or more. Mr. Piris responded that he understood the elements of the offense. The Court asked Mr. Piris to describe in his own words what he had done that made him think he was guilty of the offense charged. Mr. Piris responded as follows:

THE DEFENDANT: At one point or another back in September, 2006, last year, I had just purchased a bakery and me and my wife were working there full-time, she's right here behind me, practically 12, 14, 16 hours, we even—she would even leave for a half hour, pick up the kids at school and bring them to the bakery and we, whole family, four kids and us, too, would leave there ten, eleven at night from me being there at four in the morning. At one point or another, I was approached by Mr. Andrade with a chance to make a little bit of money and I intended to be a middle man in some transaction with the hope of making a couple hundred bucks. That's basically what happened, your Honor.

THE COURT: But the transaction involved cocaine?

THE DEFENDANT: Yes, your Honor.

THE COURT: And so you had an understanding with Mr. Andrade that you would what, deliver to someone else, obtain the money?

THE DEFENDANT: I would try to hook them up and Andrade would break up $200, $300 for me just for hooking up the deal.

THE COURT: You did this knowingly and willingly?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did it involve more than 500 grams of cocaine?

THE DEFENDANT: Yes. Yes, your Honor.

THE COURT: It did? More than 500? Thank you very much, Mr. Piris.

THE DEFENDANT: Thank you.

*Id.* at 30–31. At that point, the Court asked the Assistant United States Attorney to describe for the Court the evidence that the Government would put on if Mr. Piris decided to proceed to trial. The Assistant United States Attorney described transactions between Mr. Andrade and Mr. Piris that involved kilogram amounts of cocaine. When the prosecutor had finished, the Court asked Mr. Piris if he disagreed with anything the prosecutor had said that he did, to which Mr. Piris responded, "I don't, your Honor." *Id.* at 33.

At the conclusion of the Rule 11 hearing, the Court asked Mr. Piris if he wanted to plead guilty because he was in fact guilty of the offense charged and if he had chosen to plead guilty freely and voluntarily. Mr. Piris responded in the affirmative. Neither counsel knowing of any reason why the Court should not accept the plea, the Court found that Mr Piris was competent, that he understood the nature of the charge, that he understood the rights he would be waiving by pleading guilty, that he understood the consequences of pleading guilty, that he was pleading guilty because he was in fact guilty of the offense charged, and that his guilty plea was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The Court therefore accepted Mr. Piris's guilty plea and made a finding that

he was guilty of the offense charged in the substitute information.

Nearly three weeks later, Mr. Piris met with the Probation Officer along with Mr. Wenc. At that time, Mr. Piris stated that his mental condition was much improved, and he also admitted to the Probation Officer that he was brokering kilogram quantities of drugs for Mr. Andrade. In late December 2007, however, Mr. Piris informed Mr. Wenc that while he was guilty of a conspiracy to distribute drugs, he was never involved in distributing more than 500 grams of cocaine as charged in the substitute information. According to Mr. Piris, he had only distributed between 200–300 grams of cocaine, which, if true, would mean that he would not be subject to the mandatory minimum sentence of five years in prison. In January 2008, Mr. Wenc informed the Government of Mr. Piris's change of position. Mr. Piris asked Mr. Wenc to withdraw his guilty plea, at which point Mr. Wenc asked to be replaced as counsel for Mr. Piris.

The Court appointed replacement counsel for Mr. Piris, who filed the present motion to withdraw Mr. Piris's guilty plea on the ground that he was not involved in more than 200–300 grams of cocaine—not the more than 500 charged in the substitute information.[2] According to Mr. Piris, he had been on a drug binge shortly before his plea colloquy, and as a consequence, he did not understand what he was doing or saying to the Court on August 30. The Government opposes the motion to withdraw, and as a result, the Court held hearings on the motion. The Court heard testimony from Mr. Wenc and Mr. Piris, as well as from a psychological expert retained by Mr. Piris and a case agent. The Court also received into evidence various exhibits, including a transcript of Mr. Piris's plea colloquy.

## II.

■ Rule 11(d)(2)(B) of the *Federal Rules of Criminal Procedure* permits a defendant to withdraw his plea anytime before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B). The Second Circuit has explained that while "this standard implies that motions to withdraw prior to sentence should be liberally granted, a defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal...." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) (citation and quotation marks omitted); *accord United States v. Doe*, 537 F.3d 204, 210 (2d Cir.2008). "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *Doe*, 537 F.3d at 211 (quotation marks omitted); *see United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997).

■ In considering whether a defendant has shown a "fair and just reason" for

2. Mr. Piris's replacement counsel, William Koch, moved to withdraw as Mr. Piris's counsel after the hearing on the motion at the request of Mr. Piris, who apparently believed that Mr. Koch did an inadequate job at the hearing. *See* Mot. for William T. Koch, Jr. to Withdraw as Attorney for Amaury Piris [doc. # 1191]. Because Mr. Piris has submitted two letters to the Court in which he rectifies the mistakes he believes Mr. Koch made during the hearing, the Court will decide the Motion to Withdraw His Guilty Plea [doc. # 1046]. Furthermore, the Court does not believe that Mr. Koch's representation of Mr. Piris at the hearing was inadequate.

withdrawing his guilty plea, the trial court should consider, among other factors: "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Doe*, 537 F.3d at 210; *see United States v. Couto*, 311 F.3d 179, 185 (2d Cir.2002). Where involuntariness is asserted as a basis for withdrawing a guilty plea, the "defendant must raise a significant question about the voluntariness of the original plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997). "A defendant's bald statements that simply contradicts what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.*; *see Doe*, 537 F.3d at 211.

### III.

For several reasons, the Court does not believe that Mr. Piris has shown a fair and just reason for permitting him to withdraw his guilty plea.

■■ *First*, although Mr. Piris claims to have been high on drugs at the time of his plea allocution and that therefore he was not competent to enter a voluntary plea, the Court does not believe that Mr. Piris has raised a substantial question as to the voluntariness of his plea. A defendant is competent to plead guilty if he has a sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against him. *See United States v. Nichols*, 56 F.3d 403, 412 (2d Cir.1995). The Court is convinced that Mr. Piris was competent to enter a plea on August 30, fully understood the charges, his rights, and the consequences of pleading guilty, and chose to plead guilty freely and voluntarily because he was in fact guilty of the offense charged.

■ The Court says this for several reasons. For one, during the plea allocution—which was conducted under oath—Mr. Piris told the Court that he was competent, that his mind was clear, and that he knew what he was doing. As the Supreme Court has noted, statements made at plea allocutions "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see Adames v. United States*, 171 F.3d 728, 732 (2d Cir.1999) (reiterating that statements at plea allocution " 'carry a strong presumption of verity' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them," citing cases). The Court spent forty-five minutes with Mr. Piris during the Rule 11 hearing and Mr. Piris's responses to the Court's questions, which included narrative and articulate responses and not just "yes" and "no" answers, do not suggest that he was so under the influence of drugs that he was incapable of entering a knowing and informed plea.

For another, his lawyer, Mr. Wenc, spent nearly an hour with Mr. Piris before the plea hearing, and according to Mr. Wenc, an experienced attorney, Mr. Piris was fully competent and not under the influence of drugs at the time of the hearing. Mr. Wenc went over the plea agreement with Mr. Piris, and although Mr. Piris was anxious about his case (not unlike other defendants), he was able to understand what was happening and was fully coherent and competent. In fact, when asked at the plea hearing whether Mr. Wenc believed Mr. Piris to be competent, Mr. Wenc responded that Mr. Piris was competent and understood the nature of

the proceedings. Given that Mr. Wenc spent nearly two hours with Mr. Piris on August 30, the Court believes that Mr. Wenc would have noticed if Mr. Piris was under the influence of drugs as he claims and therefore incapable of entering a plea. Indeed, Mr. Wenc—whose testimony the Court credits—said that he has had clients who have been under the influence of alcohol or drugs at the time of their plea hearings and in those circumstances, he always asks for a continuance. That was not necessary for Mr. Piris.

Furthermore, while Mr. Piris was no doubt using drugs before his bond was revoked, he had spent two days at the Wyatt correctional facility before the plea hearing. During his intake interview at Wyatt, Mr. Piris filled out a form indicating that he was not depressed or considering suicide. More importantly, there is no record indicating that Mr. Piris was showing any signs of withdrawal from the massive amounts of heroin and cocaine he says he was taking before admission to Wyatt. Dr. Kenneth Selig, Mr. Piris's expert, testified that had Mr. Piris been taking the drugs he now claims he was taking, he would have shown some symptoms of withdrawal at Wyatt, and would have shown the same symptoms on August 30 when he appeared before the Court for his plea colloquy. Yet, there is no record from Wyatt that he was showing such symptoms, and he showed none before the Court on August 30. *See* Transcript [doc. # 1155] at 24 ("I don't have any evidence that he was medicated at anytime at Wyatt for heroin withdrawal.").

The Court and Dr. Selig had the following colloquy at the hearing on the motion to withdraw the guilty plea:

THE COURT: I mean, heroin withdrawal, I've had some people, it's not something you hide easily.

DR. SELIG: No. Correct. You are absolutely right, your Honor.

THE COURT: Even from me.

DR. SELIG: Sweating and muscle twitching, and very uncomfortable.

. . .

THE COURT: But just so we are clear on this, and I haven't seen these records, there is no record from Wyatt for the 28th, the 29th or the 30th or perhaps the 31st, the day after, that Mr. Piris is undergoing heroin withdrawal symptoms.

DR. SELIG: I agree with you, your Honor.

THE COURT: That doesn't strike you as odd? DR. SELIG: Yes, it does.

THE COURT: That oddness, does it cause you to have any doubt about your conclusions?

DR. SELIG: In and of itself, it does; compared to the bulk of the evidence it doesn't. But in and of itself, it does. It does raise a question in my mind about what's going on.

*Id.* at 24–25. The discussion continued as follows:

THE COURT: How long would it take, though, for somebody to—I'm pretty attentive to the people who are trying to plead guilty in front of me, and two days later he's in front of me, would he be totally able to hide that from me and his counsel? It probably takes about an hour-long presentation where he's got to stand up and answer a whole variety of questions, not all of which are yes or no answers.

DR. SELIG: I understand your question, your Honor, and that would surprise me, you know, I agree with your concern.

*Id.* at 39.

In response to questions from the Assistant United States Attorney regarding Mr.

Piris's claim that he was taking large quantities of drugs before his bond was revoked, Dr. Selig gave these answers:

Q. Do you see that sentence at the beginning of paragraph 19 [of Mr. Piris's affidavit] that says: "He partied without sleeping starting on August 23rd, 2007, and the whole August 24th, 2007, weekend all the way until he went to court on Tuesday, August 28th, 2007, and that he did a variety of drugs including heroin, cocaine and marijuana"?

A Yes.

Q. And my question to you is, assuming that he had the level of drug use that you've described all the way through the time that he was out on bond and then he partied in this manner for, by his own words, nearly five straight days, *would you have expected him to be as lucid and articulate as he was at his guilty plea hearing on August 30th?*

A *No.*

*Id.* at 32 (emphasis added).

Finally, in response to further questions from the Assistant United States Attorney, Dr. Selig, Mr. Piris's own expert witness, opined that based upon his review of the plea colloquy, Mr. Piris was competent to enter a plea on August 30:

Q. So let's assume that on August 30th of 2007, as he's standing here in court ready to do his guilty plea, he's under stress, he's anxious, okay? And that at some point because we know he was getting dirty urines, correct, he had been using drugs while out on bond?

A. Correct.

Q. It's your opinion, however, that he was still, nevertheless, despite that stress, that anxiety and the use of those drugs while he was out on

bond, he was legally competent to enter a guilty plea, was he not?

A. Yes, my opinion he was.

Q. *He was able to understand the nature of what was happening in the courtroom, correct?*

A. *Yes.*

Q. *He was certainly able to assist his defense counsel in these legal proceedings, correct?*

A. *He certainly met the level of competence, yes.*

*Id.* at 34 (emphasis added).

As a consequence, the Court rejects Mr. Piris's claim that he was incompetent on August 30 when he entered his guilty plea. *See United States v. Nichols,* 56 F.3d 403, 411 (2d Cir.1995) ("In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment.").

*Second,* the Court also rejects Mr. Piris's assertion that his counsel, Mr. Wenc, was ineffective. Mr. Piris has questioned Mr. Wenc's representation because Mr. Piris says that he was never advised of the relationship between sentence duration and drug quantity. According to Mr. Piris, had he been made aware of that relationship between quantity and length of sentence, he would never have pled guilty to a conspiracy involving more than 500 grams of cocaine.

■ Ineffective assistance of counsel during plea negotiations can be a basis for allowing a defendant to withdraw a plea since ineffective assistance of counsel undermines the voluntary and intelligent nature of a defendant's decision to plead guilty. *See Doe,* 537 F.3d at 213. The Second Circuit has explained that "[t]o advance an ineffective assistance of counsel claim in the context of a plea, the

defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 213–14 (quotation marks omitted); *see United States v. Arteca,* 411 F.3d 315, 320 (2d Cir.2005); *United States v. Torres,* 129 F.3d 710, 716 (2d Cir.1997). "To satisfy the second prong ... in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Arteca,* 411 F.3d at 320.

■ Based on the record before it, the Court concludes that Mr. Wenc's representation of Mr. Piris was not ineffective. As Mr. Wenc testified, until right before the plea colloquy on August 30, it had always been Mr. Piris's consistent position that he was never involved in drug transactions with Mr. Andrade. Instead, Mr. Piris always told his lawyer that he was not involved with drugs at all, only with procuring "girls." In those circumstances, there was no need for Mr. Wenc to discuss different quantities with Mr. Piris, since it was his consistent position with his counsel that he was never involved in drugs at all. Mr. Wenc always planned to proceed to trial, and to that end, he was the only lawyer representing a defendant in this very large conspiracy to move to suppress the wiretaps, the key evidence against Mr. Piris. Mr. Wenc also hired a private investigator to look into Mr. Piris's claims that he and Mr. Andrade were discussing "girls" not drugs, though the investigator was not able to confirm Mr. Piris's claim. According to Mr. Wenc, whose testimony the Court credits, Mr. Piris never questioned the amount of drugs involved in the alleged conspiracy; instead, he denied having anything to do with drugs. It was not

until right before the plea allocution that Mr. Piris finally owned up to his own counsel that he was in fact involved in drug transactions with Mr. Andrade. Mr. Piris also agreed with the quantities alleged by the Government, not only to his counsel but to the Court and Probation as well.

Furthermore, Mr. Piris had plenty of information about the relationship of drug quantity and sentences. He was originally charged with a conspiracy involving more than five kilograms and was told that the charge carried a mandatory minimum of ten years. Later, the Government revised the quantity to two and one-half to three kilograms, and the mandatory minimum dropped from ten years to five. Also, the Sentencing Guideline stipulation in his written plea agreement showed the relationship between sentencing and drug quantity. Finally, Mr. Piris is a smart, articulate, and street-wise defendant. The Court has no doubt that he understood that the length of his sentence was in some way dependent on the quantity of drugs involved.

Therefore, the Court concludes that Mr. Wenc's representation did not fall below an objective standard of reasonableness, and that his failure to tell Mr. Piris about the relationship between drug quantity and length of sentence was not the reason why Mr. Piris chose to plead guilty and forgo a trial. As noted next, Mr. Piris chose to plead guilty because he was guilty of the offense charged. *See Arteca,* 411 F.3d at 321.

■ Third, while Mr. Piris now claims that he is not guilty of conspiracy to distribute 500 grams or more of cocaine, the Court is not convinced. "A claim of innocence can be a basis for withdrawing a guilty plea, but the claim must be supported by evidence." *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001).

"A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw a guilty plea." *Id.*

As noted earlier, Mr. Piris admitted under oath on August 30 to distributing well more than 500 grams of cocaine. Though he says he was under the influence of drugs at the time, he made the same admission to the Probation Officer several weeks later, at a time when even Mr. Piris does not claim that he was under the influence of drugs. And when Mr. Wenc went over the plea agreement with Mr. Piris on August 28 and August 30, Mr. Piris never denied the quantity of drugs attributed to him.

Mr. Piris concedes that he lied to his attorney during the course of his representation, and he was involved in distributing drugs, though not 500 grams or more. Yet the wiretaps that were intercepted between Mr. Andrade and Mr. Piris belie Mr. Piris's current claim. Instead, they are consistent with purchases of kilogram quantities. There are references to "girls" in the wiretaps, but the Government has cooperating witnesses who would testify that "girls" meant drugs. The Court also reviewed summaries of numerous wiretaps involving Mr. Andrade that the Government presented at the hearing on the motion to withdraw the guilty plea, and it is clear from the context of those conversations that the term "girls" refers to drugs, not women. *See Couto*, 311 F.3d at 186 (holding that district court is not obligated to credit "whatever evidence it thought the government might present at a subsequent trial"). Neither could Mr. Wenc confirm Mr. Piris's claim that the references on the conversations to "girls" meant women, not drugs. Furthermore, Mr. Andrade has admitted to being involved in distributing kilogram quantities of cocaine, not smaller quantities such as 200–300 grams. Indeed, Mr. Andrade acknowledged at his plea colloquy to being involved in the distribution of over 50 kilograms of cocaine.

According to Mr. Piris at the hearing on the motion to withdraw his guilty plea, he lied to the Court under oath on August 30, he lied to his attorney throughout the course of his representation, and he lied to the Probation Officer in September 2007. However, he now would like the Court to credit his current claim that he distributed drugs, just not more than 500 grams. And he would like the Court to do so on the basis of Mr. Piris's say so, without any independent evidence to corroborate his current version of events.

■ The Court is unwilling to credit Mr. Piris's latest story. The evidence is far more consistent with the version Mr. Piris himself told under oath on August 30. In short, the Court has no doubt that Mr. Piris pled guilty on August 30 because he was guilty of the offense. That he now believes he made a bad choice in pleading guilty and prefers to proceed to trial is not a reason to relieve Mr. Piris of his guilty plea. "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Gonzalez*, 970 F.2d at 1100; *see United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir.2004).

*Fourth*, Mr. Piris did not act promptly in informing the Court and the Government of his desire to withdraw his guilty plea. Nearly five months passed from the time of the guilty plea to the time Mr. Piris informed the Government of his desire to withdraw his plea. Even more time passed before this Court was informed of

Mr. Piris's change of heart.[3] Mr. Piris claims that it was not until he truly understood the relationship between drug quantity and length of sentence that it ever occurred to him to try to withdraw his plea. But as previously noted, the Court rejects that claim. An observation from the Second Circuit in another case applies equally to Mr. Piris: "Whereas a swift change of heart may indicate a plea made in haste or confusion, the fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily." *Doe*, 537 F.3d at 213 (quotation marks and citations omitted); *see Gonzalez*, 970 F.2d at 1100 (Defendant's "assertion of his innocence is undercut by its timing, coming nearly seven months after the plea.").

 *Fifth*, the Court believes the Government would be prejudiced by allowing Mr. Piris to withdraw his guilty plea at this late date. All of the defendants charged in this case pled guilty except one. That case (which also involved drug conspiracy charges) proceeded to trial in May 2008,[4] nearly two months before the present motion to withdraw Mr. Piris's guilty plea was filed. Were the Court to permit Mr. Piris to withdraw his guilty plea now, the Government would have to conduct two trials for this drug conspiracy. More fundamentally, the Government and society have a strong interest in the finality of guilty pleas that would be disserved by allowing Mr. Piris to withdraw his guilty plea in the circumstances of this case. *See Maher*, 108 F.3d at 1529. The interest in finality is properly trumped when a defendant provides the Court with a fair and just reason for permitting withdrawal of a guilty plea. Mr. Piris has provided no such reason. *See United States v. Fernandez–Antonia*, 278 F.3d 150, 156 (2d Cir.2002) (If the defendant's arguments are without merit, "there could have been no 'fair and just reason' for [him] to withdraw his guilty plea....").

### IV.

Therefore, The Court DENIES the Motion to Withdraw the Defendant's Guilty Plea [doc. # 1046].

IT IS SO ORDERED.

---

**3.** Mr. Piris originally filed a motion in March 2008 seeking to withdraw from only the quantity portion of his plea. *See* Motion to Vacate Plea Agreement as to Quantity [doc. # 905]. After a discussion with the Court in which it was noted that Mr. Piris had pled guilty to a charge of conspiring to distribute more than 500 grams of cocaine, that motion was denied without prejudice to renewal. *See* Order [doc. # 1032]. Mr. Piris filed the present Motion to Withdraw Defendant's Guilty Plea [doc. # 1046] on July 16, 2008.

**4.** *See United States v. Rojas*, 06cr269 (MRK).