16-325-cr(L)
*United States v. Zografidis, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand eighteen.

Present:
> ROBERT D. SACK,
> PETER W. HALL,
> CHRISTOPHER F. DRONEY.
> *Circuit Judges.*

---

United States of America,

> *Appellee,*

v.                                                                                      16-325-cr;
                                                                                        16-2306-cr

Demetrios Papadakos, AKA "Jimmy the Greek",
AKA "Jimmy"; David Solano, AKA "Bobby", AKA
"Papi"; Domenick Ribustello, AKA "Dom", AKA "D";
George Tkaczyk, Jr., AKA "Georgie"; Vasiliki
Papadakos, AKA "Vaso"; John Yerinides; Ioannis
Papachristou, AKA "Johnny"; Dimitrios Karpipdis;
Savvas Giannoglou, AKA "Steve"; Carlos
Hendricks, AKA "Carlito"; James Lyons; Qasim
Seyal; Efstrati Papadakos, AKA "Steve"; Julio
Brinez, AKA "Diesel", AKA "D",

> *Defendants,*

Konstantinos Zografidis, AKA "Gus", AKA
"Poncho"; Alfred Catino, AKA "the Old Man", AKA
"Anthony Vitacco", AKA "Frank Ross", AKA
"Alphonse Catino", AKA "Chico", AKA "Frank
Russo", AKA "Herbie",

     *Defendants-Appellants.*

---

| | |
|---|---|
| *For Appellee*: | VANESSA RICHARDS (Marc H. Silverman, of counsel, *on the brief*), *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT. |
| *For Defendant-Appellant Zografidis*: | WILLIAM T. KOCH, JR., Law office of William T. Koch, Jr., Old Lyme, CT. |
| *For Defendant-Appellant Catino*: | BENJAMIN M. DANIELS (James I. Glasser, *on the brief*), Wiggin and Dana LLP, New Haven, CT. |

Appeal from final judgment entered January 29, 2016 and June 21, 2016, in the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's decisions and judgments are **AFFIRMED**.

Konstantinos Zografidis and Alfred Catino appeal from their convictions arising out of a large drug trafficking operation. Specifically, they appeal the district court's denial of their motions to suppress evidence gained through wiretap warrants, the district court's denial of their motion for a *Franks* hearing, the district court's denial of Zografidis's motion to withdraw his guilty plea, and the district court's denial of Zografidis's motion to suppress evidence seized from his home. We

assume the parties' familiarity with the underlying facts, the procedural history, the arguments presented on appeal, and the district court's rulings which we reference only to explain our decision.

Zografidis and Catino first assert that the district court erred by denying their motions to suppress evidence gained through wiretap warrants because those warrants failed to articulate a full and complete statement of necessity. "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *United States v. Diaz*, 176 F.3d 52, 109 (2d Cir. 1999). "Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, but to decide if the facts in the application were minimally adequate to support the determination that was made." *Id.* (quotation marks omitted).

"Although the required showing is to be tested in a practical and commonsense fashion, an affidavit offered in support of a wiretap warrant must provide some basis for concluding that less intrusive investigative procedures are not feasible." *United States v. Lilla*, 699 F.2d 99, 103 (2d Cir. 1983) (internal citation and quotation marks omitted); *see* 18 U.S.C. § 2518(3)(c) (providing that, before issuing the wiretap warrant, the judge must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried"). At the same time, "the statute does not require that all possible techniques be tried before a wiretap may be authorized." *United States v. Martino*, 664 F.2d 860, 868 (2d Cir. 1981). "In short, the requirement is simply

3

designed to assure that wiretapping is not resorted to in situations where traditional investigation techniques would suffice to expose the crime." *Id.* (internal quotation marks omitted).

In the wiretap warrant application as to Target Phone 1,[1] Task Force Officer Cisero offered detailed information as to why Zografidis was proving difficult to surveil—for example, making U-turns, driving in "circuitous" routes, and squaring blocks—as well as details showing how unwilling Zografidis was to deal with anyone he had not dealt with in the past, thus making it much more difficult to use an undercover officer or introduce someone willing to act as a confidential witness. The application also rejected investigative techniques like trash pulls, pole cameras, GPS tracking, grand juries, and interviews based on the officers' belief that they would either be ineffective or risk the investigation's detection. Those detailed facts are sufficient to show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(3)(c); *see also Martino*, 664 F.2d at 868 (holding that facts similar to those set out in the affidavit in this case met the requirement that the affidavit articulate a full and complete statement of necessity); *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977) (upholding a wiretap warrant where the supporting affidavit "stated that normal investigative techniques were attempted on thirteen specific dates, that

---

[1] On appeal, the parties state in a footnote that they "maintain[ ] [their] challenge to all the wiretaps through which [they were] intercepted in this case." Catino Br. 29 n.21. They acknowledge, however, that the briefing "focuses on the First Wiretap Affidavit because the subsequent applications depended on the First Wiretap and copied most of its contents verbatim." Catino Br. 29 n.21. For that reason, we focus only on the wiretap warrant application for Target Phone 1. We have, however, reviewed the remaining affidavits, and are satisfied that the requisite necessity showings were made in those affidavits.

4

the subjects were 'difficult to tail' because they were 'very careful and . . . constantly changing routes,'" and where the affidavit "also noted that [the defendant] often went to a location that had been previously 'bugged' successfully and that, as a result, the subjects were especially sensitive to police surveillance") (alteration in original); *United States v. Kirk Tang Yuk*, --- F.3d ---, No. 15-131, 2018 WL 1321081, at *12 (2d Cir. Mar. 15, 2018). Given the facts recited in the affidavit, the district court did not err in denying the defendants' motions to suppress.

Catino and Zografidis also appeal the district court's denial of their motion for a *Franks* hearing.[2] Specifically, they assert that they were entitled to a *Franks* hearing because they offered proof showing that Confidential Witness 1 was, in fact, multiple people, that Task Force Officer Cisero had failed to disclose that Confidential Witness 2 (CW 2) was a disbarred attorney receiving remuneration in exchange for his help in the case, and that the allegations as to Catino's alleged laundering of money through Tim Hortons gift cards were incorrect.

The affidavit they offered in support of their argument that Confidential Witness 1 was, in fact, two different individuals, was unclear and did not establish that Task Force Officer Cisero engaged in deliberate falsehood or reckless disregard

---

[2] "In *United States v. One Parcel of Property Located at 15 Black Ledge*, 897 F.2d 97 (2d Cir. 1990), we reviewed the denial of a *Franks* hearing in a forfeiture case for clear error to the extent that denial rested on factual findings." *United States v. Falso*, 544 F.3d 110, 126 n.21 (2d Cir. 2008). "We did not explain why that was the appropriate standard, however, and [there exists] a circuit split on the issue." *Id.*; *compare United States v. Reiner*, 500 F.3d 10, 14 (1st Cir. 2007) (reviewing for clear error the denial of a *Franks* hearing); *United States v. Buchanan*, 985 F.2d 1372, 1378 (8th Cir. 1993) (same); *United States v. Skinner*, 972 F.2d 171, 177 (7th Cir. 1992) (same), *with United States v.* Homick, 964 F.2d 899, 904 (9th Cir. 1992) (reviewing *de novo* the denial of a *Franks* hearing); *United States v. Martin*, 332 F.3d 827, 833 (5th Cir. 2003) (reviewing *de novo* the denial of a *Franks* hearing). To the extent that this issue remains an open one in our Court, we need not decide it in this case because, even under a *de novo* standard of review, denial of the *Franks* hearing was proper.

5

for the truth. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (holding that to warrant a hearing "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof"). And while the government concedes that the information as to the Tim Hortons money laundering scheme was incorrect and that Task Force Officer Cisero omitted information about the credibility of CW 2, even disregarding the allegations as to the money laundering scheme and CW 2, the affidavit in support of the wiretap warrant application contained sufficient factual information to support a finding of probable cause. *See Franks*, 438 U.S. at 171–72 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."). For example, Task Force Officer Cisero's affidavit included the following facts: Confidential Witness 3 making four controlled purchases of cocaine from Zografidis, Confidential Witness 1's experience of Zografidis refusing to deal with him or anyone else he had not dealt with in the past, and Zografidis's attempts to ensure that law enforcement was not "tailing" him. That information, along with the other facts set forth in the affidavit, provided a sufficient basis for determining there was probable cause even if we disregard the facts as to the money laundering scheme and CW 2. The government similarly had sufficient probable cause to execute wiretaps against Catino because the applications included, for example, evidence of intercepted conversations with him, fictitious subscriber information, and independently corroborated information from

6

Confidential Witnesses 1, 2, and 3. The district court did not err when it denied Catino and Zografidis's motion for a *Franks* hearing.

Zografidis appeals the district court's denial of his motion to withdraw his guilty plea, a decision we review for an abuse of discretion. *See United States v. Schmidt*, 373 F.3d 100, 101 (2d Cir. 2004). "Motions to withdraw guilty pleas before sentencing are governed by Federal Rule of Criminal Procedure 32(e)." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). "Although Rule 32(e) provides that a defendant may move to withdraw a guilty plea upon a showing of a 'fair and just reason,' it is basic that '[a] defendant has no absolute right to withdraw his guilty plea.'" *Id.* (quoting *United States v. Williams*, 23 F.3d 629, 634 (2d Cir. 1994)) (alteration in original). "The defendant bears the burden of demonstrating valid grounds for relief." *Id.* "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.*

Zografidis asserts that the district court abused its discretion by denying his motion to withdraw his guilty plea because, at his change-of-plea hearing, the court failed to make clear that deportation was "automatic" or "presumptively mandatory," i.e., that he would be, as opposed to could be, deported. The Federal Rules of Criminal Procedure require the court, before accepting a guilty plea, to "inform the defendant of, and determine that the defendant understands" that "if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the

future." Fed. R. Crim. P. 11(b)(1)(O). At the change-of-plea hearing, the district court made clear to Zografidis the deportation consequences of pleading guilty:

> The Court: Okay. Are you a U.S. Citizen?
>
> The Defendant: No, I'm not Your Honor.
>
> The Court: Well, very likely, since you're not a U.S. citizen, you could be subject to deportation or removal from the United States, you would be denied citizenship and denied admission to the United States in the future. Do you understand that?
>
> The Defendant: I understand what they say, Your Honor, but I'm more American than anybody else. I love my country. This is my home. I'll have to take that up with the Immigration Department if it comes to that.
>
> The Court: But you should assume, for purposes of today, you're going to face that kind of proceeding.
>
> The Defendant: I understand that, Your Honor. I know that, Your Honor.

Gov't Appx. 31–32. Moreover, Zografidis's plea agreement informed him that deportation was "presumptively mandatory," and Zografidis confirmed in open court that he had read the plea agreement and reviewed it with his attorney. And while Zografidis now asserts that he was not competent at the change-of-plea hearing to understand the district court's explanation of the deportation consequences, the record shows otherwise. Testifying under oath, Zografidis indicated throughout the hearing that he understood what was occurring and what rights he would be giving up by pleading guilty. At one point he told the court that he was "confident that [he] underst[ood] the nature of the proceedings." Gov't Appx. 24. Moreover, Zografidis had previously undergone a competency evaluation in this case, which concluded that he was competent, and the district court found him competent on the record at the time of his plea. Based on our review of the record, we hold that the

8

district court did not exceed the bounds of its discretion when it denied Zografidis's motion to withdraw his guilty plea.[3]

Zografidis also asserts that his plea lacked a sufficient factual basis under Rule 11 because the factual statement concerning his acts and his intent were insufficient to make out the charged crimes. At the change-of-plea hearing, however, Zografidis himself stated "I participated in a involvement [sic], drug transactions, buy, sell, conspiracy, more or less. Knowingly, willfully, and voluntarily, okay. And I did all that, Your Honor. Possess drugs, yes, I did that. Distribute drugs, yes, I did that." Gov't Appx. 60. The record of the Rule 11 proceedings belies Zografidis's argument that his plea lacked a sufficient factual basis.

Zografidis also appeals the district court's denial of his motion to suppress evidence found during a search of his home, and Catino appeals the district court's denial of his motion for a *Fatico* hearing. *See United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978). Both Zografidis and Catino waived the right to appeal those issues in their plea agreements. As a result, we will not consider those arguments.

---

[3] To the extent that Zografidis asserts an ineffective assistance of counsel claim related to his counsel's failure to explain to him that he was presumptively deportable, *see United States v. Al Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015) (summary order) ("[W]here the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness."), we decline to address that claim on direct appeal, *see United States v. Khedr*, 343 F.3d 96, 99 92d Cir. 2003) ("[T]his court has expressed a baseline aversion to resolving ineffectiveness claims on direct review." (internal quotation marks omitted)).

9

We have considered the appellants' remaining arguments and find them to be without merit.  Accordingly, the district court's judgments are **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk