06-4124-cr
*United States v. Doe*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
August Term, 2007

(Argued: April 24, 2008                     Decided: August 13, 2008)

Docket No. 06-4124-cr

―――――――――――――――――――――――――

UNITED STATES OF AMERICA,

*Appellee*,

―v.―

JOHN DOE,

*Defendant-appellant*.

―――――――――――――――――――――――――

Before:     KEARSE and POOLER, *Circuit Judges*, and COTE, *District Judge*.[*]

―――――――――――――――――――――――――

Appeal from the judgment of conviction entered on August 25, 2006 in the United States District Court for the Southern District of New York following a plea of guilty. Defendant-appellant argues that the district court abused its discretion in denying his motion to withdraw his plea without conducting an evidentiary hearing. We hold that the district court did not abuse its discretion in denying the defendant's motion without a hearing because, on the basis of undisputed facts, the court permissibly found that the defendant's plea was entered voluntarily. The prosecutor's statement, which reminded the defendant of the consequences of a decision to proceed to trial, did not render the defendant's plea involuntary. We therefore affirm the judgment of the district court.

―――――――――――――――――――――――――

[*]     The Honorable Denise Cote, United States District Judge for the Southern District of New York, sitting by designation.

COTE, *District Judge*:

Defendant-appellant ("defendant") appeals from the judgment of conviction entered by the United States District Court for the Southern District of New York on August 25, 2006. The defendant claims that the district court abused its discretion by denying his motion to withdraw his guilty plea without conducting an evidentiary hearing. He claims that his plea was entered involuntarily, as the result of a threatening statement made by the prosecutor immediately before the defendant entered his plea. We hold that the district court did not abuse its discretion in denying the defendant's motion without a hearing because, on the basis of undisputed facts, the court permissibly found that the defendant's plea was entered voluntarily. The prosecutor's statement, which reminded the defendant of the consequences of a decision to proceed to trial, did not render the defendant's plea involuntary.

BACKGROUND

These facts are undisputed and are drawn from the record. By indictment filed November 7, 2002, the defendant was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In a series of superseding indictments, the defendant and several codefendants were ultimately charged with an array of narcotics and firearms offenses, participation in a criminal racketeering enterprise, and the murder of the leader of that enterprise.[1] In a separate indictment, the defendant and a codefendant, his girlfriend, were charged with robbery, conspiracy to commit robbery, a firearms offense, and murder of their robbery victim.

Beginning in late 2002, while detained on the felon-in-possession charge, the defendant communicated a desire to cooperate with the Government in connection with the prosecution of

---

[1] The murder of the enterprise's leader was not charged as a separate crime, but rather as a predicate racketeering act.

his codefendants. The Government rebuffed the defendant's overtures. In April 2004, the defendant again approached the Government about cooperation, indicating in writing that he wished "to explore the possibility [of] entering into [a] cooperation agreement with your office." Again, the Government declined. The defendant approached the Government about cooperating once more, in September 2004; the Government rejected the defendant's offer.

On April 25, 2005, the district court set a January 17, 2006 trial date for the defendant. On or about October 6, 2005, the prosecutors and federal case agent met with the defendant and his trial counsel for a reverse proffer session -- that is, a session in which the prosecutors described the evidence against the defendant so that he could make an informed decision whether to plead guilty or proceed to trial. The Government's plea offer capped the defendant's exposure at forty-five years' imprisonment. During this session, the prosecutors presented to the defendant a series of letters he had written to his girlfriend in 2003 and 2004. The letters, which the defendant's girlfriend had provided to the Government, addressed a number of crimes committed by the defendant and his codefendants, and were rife with the defendant's admissions of complicity in these crimes and professions of a desire to cooperate with the Government. At the reverse proffer session, the defendant was told that the letters would be turned over to his codefendants if he chose to proceed to trial, but would be withheld from them if he chose to plead guilty. On November 2, the defendant informed his trial counsel that he intended to plead guilty.

On November 9, 2005, the defendant was brought before the district court, ostensibly to enter his guilty plea. According to him, however, by that time he had changed his mind and decided to proceed to trial. He informed his trial counsel of his decision, and trial counsel informed the prosecutors that the defendant no longer intended to plead guilty. Before the judge

3

entered the courtroom, the defendant's attorney and the prosecutors were engaged in a discussion, during which the defendant overheard one of the prosecutors say something to the effect that "the rest of the discovery material will have to go out to the codefendants today." The defendant understood the prosecutor to be referring to his letters to his girlfriend and it is this statement that the defendant claims coerced him into pleading. The defendant thereafter executed the plea agreement and proceeded to enter his guilty plea.

The plea agreement provided that the defendant would plead guilty to charges of conspiracy to commit robbery, participation in racketeering activity, and threatening to commit a crime of violence and assaulting another individual in aid of racketeering. The three offenses resulted in an advisory Sentencing Guidelines range of life imprisonment but carried a total maximum statutory sentence capped at forty-five years, which the defendant acknowledged in the plea agreement was a reasonable sentence. Further, the defendant agreed not to request a sentence below forty-five years and waived his right to appeal or collaterally challenge any sentence of forty-five years.

During the plea allocution, the defendant stated that he understood the plea agreement and that he had been given sufficient time to review it with his counsel. When asked whether he had been "induced to offer to plead guilty as a result of any fear, pressure, threat or force of any kind," the defendant replied no. When asked whether he had been induced to plead guilty "as a result of any statements by anyone, other than in your written plea agreement," the defendant replied no. Further, the defendant indicated that he was "fully satisfied with the advice, counsel and representation" provided by his attorney, and that he was pleading guilty because he was "in fact guilty." During his allocution, the defendant admitted that he had killed the criminal enterprise leader, had agreed with others to murder his robbery victim, and had fired a gun at a

4

third person to threaten him.  The judge accepted the defendant's plea and scheduled sentencing for February 6, 2006.  In advance of that date, all but one of the defendant's codefendants entered guilty pleas.  The one remaining defendant went to trial on January 31, was convicted, and was sentenced to life imprisonment.

The United States Probation Office issued a Presentence Investigation Report ("PSR") for the defendant on January 31, 2006.  The PSR recommended a sentence of forty-five years.  At the defendant's request, his sentencing was adjourned from February 6 to April 13, 2006.  During the month of March, the defendant wrote to three different federal prosecutors -- none of whom was assigned to his case -- expressing a desire to cooperate with the Government in prosecutions other than those of his codefendants.  The Government did not respond to these requests.

Almost five months after the entry of his plea, by letter dated April 1, 2006, the defendant wrote to the district court requesting permission to withdraw his plea and the appointment of new counsel.  The defendant first claimed that the PSR had incorrectly recommended that his terms of imprisonment on the three counts to which he pleaded guilty be served consecutively, and not concurrently, despite the fact that the forty-five year sentence stipulated in his plea agreement reflected an agreement that the terms run consecutively.  He also asserted that on November 9 he was not going to plead guilty until the prosecutor told him that both of the indictments against him would be joined and that all of the letters he had written to his girlfriend would be "placed into evidence."  He claimed that he "got scare[d]" by the possible disclosure to his codefendants of his desire to cooperate with the Government in their prosecution.  This fear "gave me enough pressure to plead guilty."  Further, the defendant

5

complained that his trial counsel had "given me wrong information and in bad faith has pressured me to plead guilty."

The district court held a series of conferences during the month of April, at which the defendant was represented by newly-appointed counsel. By letter dated May 16, the defendant moved to withdraw his plea based principally on his fear of disclosure of one of his letters to his girlfriend. This letter concerned, among other things, a murder which the defendant had not committed but with which his codefendants were charged (the "Letter"). In connection with this motion, the defendant submitted an affidavit alleging certain facts concerning his plea. He claimed that, "[l]ooking back on that day [when he entered his plea], I believe that fear clouded my judgment, and my plea of guilty was not entered into freely and voluntarily." He believed that disclosure of the Letter would make him "a marked man in prison, and my safety, and even my life, would be in jeopardy."

The Government did not concede the truth of the defendant's allegations, nor did it submit its own version of the facts alleged. It urged the district court to deny the defendant's motion without holding an evidentiary hearing. The district court received briefing from the parties and held oral argument on two separate occasions, rendering an oral decision on the motion on June 30, 2006.

Observing that a defendant must demonstrate a "fair and just reason" for withdrawing his plea, and enumerating various factors articulated by this Court for consideration of a motion to withdraw, the district court denied the defendant's motion. The district court made six findings. First, the district court observed that the defendant did not make a claim of actual innocence. Second, he waited nearly five months after entering his plea to move to withdraw it, undercutting his claim that the plea was entered as a result of a "momentary feeling of panic" engendered by

the threatened disclosure of the Letter. Third, the defendant represented at his plea allocution that his plea was freely given and not the product of coercion, and that he had sufficient time to discuss it with his counsel. Fourth, the district court recounted the defendant's numerous efforts to cooperate with the Government as well as his rejection of the Government's offer to separate the defendant from other inmates within the prison, ostensibly belying his claim that he was afraid for his life. Fifth, the district court found that the Government would be prejudiced by withdrawal of the defendant's plea, to wit: having completed the trial of the sole remaining codefendant, "the government would be prejudiced by having to proceed against [the defendant] at a separate trial at a time when its witnesses had already testified and been subject to cross-examination."

Finally, the district court rejected the defendant's ineffective assistance of counsel claim. The defendant's newly-appointed counsel argued that the defendant's letters to his girlfriend should have been withheld from discovery, and that his trial counsel should have presented to the defendant the option of challenging the Government's production of the letters under seal or taking an interlocutory appeal from any decision that the letters were discoverable.[2] The district court rejected both contentions, finding that the letters would likely have been produced in discovery "if for no other reason tha[n] for redaction for *Bruton* [*v. United States*, 391 U.S. 123 (1968)] purposes," and that counsel's suggested course for challenging production of the letters was "ludicrous." Further, the district court found that, given the overwhelming proof of the defendant's guilt, including inculpatory letters written in his own hand, and the likelihood of a

---

[2] The defendant's trial counsel did not submit an affidavit in connection with the defendant's motion to withdraw his plea. The defendant's newly-appointed counsel sent a letter to trial counsel "confirming details of the conversations at the reverse proffer session on or about October 6, 2005 and prior to the plea on November 9, 2005." Trial counsel replied that he "cannot adopt the accuracy of your letter," but stated that he would be available to testify if the district court held an evidentiary hearing on the defendant's motion to withdraw his plea.

life sentence if convicted at trial, his decision to plead guilty was "clearly in his interests." The district court found no evidence that trial counsel's "supposedly ineffective performance would have affected the outcome of the plea process [because] I do not hear counsel arguing that this defendant would not eventually have pled guilty."

The defendant was sentenced on July 18, 2006. His written sentencing submission did not make any objection to the PSR, and the district court adopted its advisory Sentencing Guidelines calculations. The Guidelines contemplated a sentence of life imprisonment, but The defendant was sentenced to consecutive terms of imprisonment of twenty years, twenty years, and five years, for a total of forty-five years, reflecting the statutory maximum terms of imprisonment on the three counts of conviction. He timely appealed.

DISCUSSION

Federal Rule of Criminal Procedure 11 permits a defendant to withdraw his plea anytime before sentence is imposed if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). While "this standard implies that motions to withdraw prior to sentence should be liberally granted, a defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (citation and internal quotation marks omitted). To determine whether the defendant has proffered a "fair and just reason" to justify withdrawal, a district court should consider, inter alia: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea. *United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002). Where a motion to withdraw a plea is premised on involuntariness, the "defendant must raise a significant question about the voluntariness of the

8

original plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Id.*

We review a district court's decision to deny a motion to withdraw a plea for abuse of discretion. *United States v. Adams*, 448 F.3d 492, 498 (2d Cir. 2006). The standard for withdrawing a guilty plea is stringent because "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (citation, internal quotation marks, and alteration omitted).

Although the defendant's failure to claim actual innocence, the five-month lapse in time between his plea and the bringing of his motion, and the prejudice to the Government occasioned by trying the defendant after completing the trial of his codefendant each informed the district court's denial of his motion, the defendant's focus on appeal is limited to the Government's "threat" to disclose his letters to his codefendants and his claim that this rendered his plea involuntary. "Where the motion argues that the plea was not voluntary, *a fortiori* the court must focus on voluntariness." *United States v. Rosen*, 409 F.3d 535, 548 (2d Cir. 2005). The Supreme Court has held that "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). "It does not follow, however, that all inducements for a defendant to plead guilty render either a plea or the consequent waiver of the right to trial by jury involuntary." *McMahon v. Hodges*, 382 F.3d 284, 290 (2d Cir. 2004). "'Voluntary' for purposes of entering a lawful plea to a criminal charge has never meant the absence of benefits influencing the defendant to plead."

9

*United States v. Marquez*, 909 F.2d 738, 742 (2d Cir. 1990). Indeed, the Supreme Court has instructed that, with regard to voluntariness, a guilty plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks omitted).

On appeal, the defendant argues that the district court abused its discretion by denying his motion to withdraw his appeal without a hearing. He contends principally that the prosecutor's threatened disclosure of his letters to his codefendants,[3] reiterated immediately before he entered his plea, placed him in "fear of retribution" and thereby "undermined any voluntariness of the plea." He further argues that the district court engaged in "unsubstantiated fact finding that defendant's fear was not genuine or that he had other or mixed motives that somehow supersede that fear." Finally, he contends that the attorney representing him at the time of his plea was ineffective by failing to advise the defendant of various ways to challenge the production of his letters to his girlfriend in discovery.

We hold that the district court did not abuse its discretion in denying the defendant's motion to withdraw his plea without conducting a hearing. We focus, as the defendant does, on the prosecutor's statement that the defendant's letters would be produced in discovery. This statement was neither a threat, a misrepresentation, nor a promise unrelated to the prosecutor's business. *See id.* It was, rather, a true recital of the scenario that would play out should the defendant choose to proceed to trial, a scenario of which he had already been apprised by the Government at the reverse proffer session. As the Government rightly observes, the defendant

---

[3] Both before the district court and on appeal, the defendant oscillated his focus between all of his letters to his girlfriend and the Letter itself. The analysis that follows applies regardless of whether we focus on all the letters or just the Letter.

was presented with "two unpalatable options": he could plead guilty and receive certain punishment of forty-five years' imprisonment, or he could proceed to trial and likely be sentenced to life imprisonment. As the Government had explained to him, the latter option would also entail the disclosure to his codefendants of his letters to his girlfriend. He was made aware of this choice at the reverse proffer session, and presumably considered it with some seriousness between that session and his plea hearing. He was fully aware of the consequences of his plea when he entered it, and thus the district court properly regarded the plea as the product of "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The prosecutor's comment to the defendant's counsel before the plea hearing merely reiterated what the defendant already knew: that he faced a choice, and that one of those choices would eventuate in the disclosure of his letters. "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Gonzalez*, 970 F.2d at 1100.

The defendant raises two principal arguments concerning the prosecutor's statement. First, the defendant emphasizes the close proximity in time between the prosecutor's statement and the entry of the defendant's plea, suggesting that this quick succession of events placed the defendant in a "panic" and induced him to plead guilty against his will. As noted above, the prosecutor's statement at the plea hearing was a reiteration of something the defendant already knew, and which he presumably factored into his initial decision to plead guilty. The prosecutor's statement may have given the defendant momentary pause, but, fully aware of the consequences of his decision, he opted to go forward with the plea. The question is not whether his "decision reflected a wholly unrestrained will, but rather whether it constituted a deliberate,

11

intelligent choice between available alternatives." *Rosado v. Civiletti*, 621 F.2d 1179, 1191 (2d Cir. 1980).

Second, the defendant argued initially that "there was no legal requirement to turn over the Letter to [his] codefendants," implicitly suggesting that the prosecutor's mention of the letters' disclosure was somehow improper and unduly coercive of the defendant's plea. This argument is meritless, and the defendant has largely abandoned it. Had the defendant chosen to go to trial, portions of his letters would have been admissible as direct evidence of his participation in the conspiracy and other crimes with which he was charged. Accordingly, because the Government clearly intended to introduce them against the defendant if he went to trial, they would have been disclosed to his codefendants. Further, to the extent the letters referred to the defendant's knowledge of crimes committed by his co-conspirators in furtherance of the racketeering enterprise, the letters would have been produced to his codefendants for redaction, pursuant to *Bruton*. *Bruton*, 391 U.S. at 126. The defendant does not dispute either of these propositions. Thus the prosecutor's statement reflected an entirely legal -- and wholly predictable -- scenario, and thus could not have rendered the defendant's plea involuntary. The defendant may have been fearful of the consequences adverted to in the prosecutor's statement, but his decision to plead guilty reflects his considered judgment to avoid those consequences as well as a likely lifetime in prison. There is no legal requirement that the decision to plead guilty be an easy one.

In addition to rejecting the defendant's argument that his plea was involuntary as a result of the prosecutor's statement, the district court permissibly relied on other indicia of the voluntariness of the defendant's plea. The defendant's allegations concerning his fearfulness upon hearing the prosecutor's comment at his plea hearing, while undisputed by the

12

Government, are belied by the defendant's own statements at his plea allocution. The defendant stated that he was entering his plea voluntarily, and not "as a result of any fear, pressure, threat or force of any kind." Considering that statements at a plea allocution carry a strong presumption of veracity, *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and that the defendant's unequivocal admissions under oath contradict his conclusory assertions of fearfulness, the district court did not abuse its discretion in declining to hold an evidentiary hearing on the defendant's motion. Moreover, the timing of the defendant's motion to withdraw his plea severely undercuts his argument that he pleaded guilty involuntarily. Whereas a "swift change of heart" may "indicate[ a] plea made in haste or confusion," *Gonzalez*, 970 F.2d at 1100 (citing *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975)), the fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily.

As to the propriety of the district court's decision not to hold a hearing on the defendant's motion, the defendant contends that "sharply disputed facts" precluded the district court's denial of his motion without a hearing. But on the facts as alleged by the defendant himself, the district court did not abuse its discretion in denying the motion. "[T]he defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing." *Id*. As discussed above, there were sufficient indications of the voluntariness of the defendant's plea based on the defendant's own rendering of the facts for the district court to conclude that no hearing was necessary. Thus, the district court acted well within its discretion by denying the defendant's motion without a hearing.

Finally, to the extent the defendant argues that his plea was involuntary as a result of trial counsel's ineffective assistance, those claims are rejected. "Ineffective assistance of counsel

13

during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). To advance an ineffective assistance of counsel claim in the context of a plea, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) " but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "To satisfy the second prong . . . in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Id.* (citation omitted). The defendant claims that his trial counsel was ineffective in his failure to apprise the defendant of certain legal strategies for challenging the disclosure of his letters -- specifically, that he could have litigated their disclosure under seal, or taken an interlocutory appeal to this court from any decision by the district court regarding their disclosure to his codefendants. For the reasons described above, the defendant's decision not to plead guilty, and therefore to go to trial, would necessarily have entailed the admission of passages from his letters in his trial, and the production of those letters to his codefendants for redaction under *Bruton*. The defendant alleges no non-frivolous basis upon which his trial counsel could have challenged this disclosure, and trial counsel was therefore not ineffective in declining to advise him of this strategy. Further, the defendant has never asserted unequivocally that absent trial counsel's alleged failings, he would have proceeded to trial. Accordingly, he has advanced no colorable claim that his plea was rendered involuntary as a result of trial counsel's ineffective assistance.

CONCLUSION

For the foregoing reasons, we affirm the district court's judgment of conviction.

14