******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTHONY D., SR.*
(SC 19382)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued January 22—officially released April 19, 2016*

*Alan Jay Black*, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robin D. Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The sole issue in this certified appeal[1] is whether, under the facts of the present case, the trial court properly denied the oral motion of the defendant, Anthony D., Sr., to withdraw his guilty plea due to ineffective assistance of counsel without conducting a further inquiry into the underlying basis of his motion. The defendant appeals from the judgment of the Appellate Court affirming the trial court's judgment of conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), rendered following the trial court's denial of his motion to withdraw his *Alford* plea.[2] See *State* v. *Anthony D.*, 151 Conn. App. 109, 110–11, 94 A.3d 669 (2014). On appeal, the defendant claims that the Appellate Court improperly concluded that the trial court had conducted a sufficient inquiry concerning the defendant's motion to withdraw. We conclude that the Appellate Court properly determined that the defendant was not entitled to a further inquiry into the basis of his motion to withdraw his guilty plea under the facts of the present case and, accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "The defendant was arrested and charged with several crimes related to his sexual abuse of his girlfriend's child, with whom he had lived since the child was five years old. On December 5, 2011, the evidentiary portion of the defendant's trial commenced, and, on that day, the state presented six witnesses, including the then fifteen year old victim, who testified extensively about the defendant's sexual abuse, which began when she was six years old. On December 6, 2011, the court conducted a hearing on the defendant's motion to suppress his confession to the police, in which he had admitted to sexually abusing the victim. Following the court's denial of that motion, the defendant entered a guilty plea under the *Alford* doctrine to one count of sexual assault in the first degree . . . and the state agreed to enter a nolle prosequi for each of the remaining criminal charges. The parties agreed to a sentence of ten years incarceration, with a five year mandatory minimum, followed by ten years of special parole." (Footnote omitted.) Id., 111.

"Before accepting the defendant's plea, the [trial] court . . . conducted a canvass of the defendant in which it asked the defendant if he understood the plea agreement, if he had discussed his plea with his attorney, if he understood the nature of an *Alford* plea and agreed that there was a likelihood of being found guilty if he went to trial, if he agreed that he likely would get a greater sentence if he proceeded to complete his trial, if he was pleading guilty to avoid the risk of trial, and if he understood that he was giving up his right to have

the state prove the charges against him, to confront witnesses and to testify on his own behalf. The defendant answered yes to each of these questions. Additionally, the defendant acknowledged that he was not threatened or forced to enter his plea, that no one had made any promises to him other than the plea agreement, and that he was acting of his own free will.

"When the court explained the charge of first degree sexual assault to the defendant, he stated that he understood the charge but that he did not agree. The court again explained the *Alford* plea and again asked the defendant if he understood and still agreed that there was a likelihood that he would get a longer sentence if convicted after trial. The defendant said yes. The court then explained the sex offender registration and treatment requirements to the defendant, and he acknowledged that he understood them. The court proceeded to ask the defendant if he knew that he would be subject to random searches, polygraph examinations and electronic monitoring; the defendant offered an inaudible response, and the court asked him if he had any questions for his attorney. The defendant responded by saying that 'nothing that I ask is gonna change anything.' The court then stated that it understood the defendant's point, but wanted to know if the defendant had any questions that he wanted to ask his attorney about what was occurring or about anything of a legal nature. The defendant said no. The court proceeded to accept the plea and to explain to the defendant that the agreement was binding and that the defendant could not come back and change his mind.

"On December 16, 2011, the defendant returned to the [trial] court for his sentencing hearing . . . . At the start of the hearing, the following colloquy took place:

" '[Defense Counsel]: . . . I'm sorry, before we begin, I understand that we are here for sentencing. I've met with [the defendant]. He is expressing to me concerns over the manner in which he was represented and is asking that he be permitted to withdraw his plea.

" 'The Court: Okay.

" '[Defense Counsel]: Under those circumstances, it would be my application to the court on his behalf that new counsel be appointed to investigate his claim.

" 'The Court: With respect to it, the court does not believe that there is any factual basis for it. This was the court that took the plea. This was done in the middle of evidence. [If the defendant] want[s] to claim at a time after that this was ineffective [assistance] or somehow coerc[ive] [he] can have a habeas proceeding. But, [defense counsel], as an officer of the court, do you know of any defect in that plea canvass that would allow the court to, in fact, take back the plea at this time?

" '[Defense Counsel]: Your Honor, I think that I need to be precise in my language. The canvass itself I think

was quite thorough.

" 'The Court: Right. I mean, we went back and forth. And my recollection was that I repeatedly advised him that this was a permanent agreement and that it could not be changed . . . .

" '[U]nless you can point out some defect, I am not inclined to have him withdraw his plea, nor am I inclined for purposes of an agreed sentencing to delay the sentencing, given the fact that the complainants are here. And . . . there was even the agreement, I believe, of the waiver of the [presentence investigation report] at the time. And the court wanted some record for probation; otherwise, the sentence would have been imposed on the date of the plea.

" 'So . . . while there may be reasons postjudgment for a different counsel, at this time, I am not going to grant your motion to withdraw because there is no prejudice. This is an agreed sentence. So, unless the court were going to give more and [defense counsel] had to persuade me to give less to maintain the agreement, there is no reason that [defense counsel] is not standing next to you today for an agreed disposition. . . . All right. The withdrawal—and I'll just take it as an oral motion, is denied.'

"The court then heard a statement from the victim's mother, and the state read a letter written by the victim, both of which explained how the defendant's actions had impacted their lives. Near the end of the hearing, before imposing [the agreed upon] sentence, the court asked the defendant if he wanted to say anything, to which the defendant responded, 'No.' " Id., 114–17.

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly denied his "timely oral motion to withdraw his plea without any type of inquiry or evidentiary hearing as to the underlying basis of [his] motion." *State* v. *Anthony D.*, supra, 151 Conn. App. 112. The Appellate Court concluded that "the defendant presented no basis for further inquiry by the court" and that, therefore, on the basis of the facts of the present case, "the inquiry conducted by the court was sufficient." Id., 119. This certified appeal followed. See footnote 1 of this opinion.

On appeal to this court, the defendant claims that the trial court's failure to conduct a further inquiry into the factual basis of his motion to withdraw his guilty plea[3] violated his constitutional rights to the effective assistance of counsel and to due process of law as protected by the sixth and fourteenth amendments to the United States constitution[4] and his rights under Practice Book §§ 39-26 and 39-27.[5] Specifically, the defendant claims that the Appellate Court improperly concluded that "the inquiry conducted by the court following the defendant's oral motion to withdraw his

plea was sufficient under the circumstances of this case."[6] Id., 112. The defendant requests that we reverse the judgment of the Appellate Court affirming the trial court's judgment of conviction and that we order the trial court to either permit the defendant to withdraw his guilty plea or to conduct an evidentiary hearing on his motion to withdraw his guilty plea. In response, the state contends that the Appellate Court properly affirmed the trial court's denial of the defendant's motion to withdraw his guilty plea without first conducting a further inquiry or holding an evidentiary hearing on the defendant's motion. Specifically, the state contends that the defendant failed to state a specific basis for his motion and that the trial court properly disregarded defense counsel's vague statement that the defendant had "concerns" relating to his legal representation. We agree with the state and, accordingly, affirm the judgment of the Appellate Court.

As a preliminary matter, we set forth the applicable standard of review. It is well established that "[t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Hall*, 303 Conn. 527, 533, 35 A.3d 237 (2012). "To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Citation omitted; internal quotation marks omitted.) *State* v. *Carmelo T.*, 110 Conn. App. 543, 549, 955 A.2d 687, cert. denied, 289 Conn. 950, 960 A.2d 1037 (2008). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Lameirao*, 135 Conn. App. 302, 320, 42 A.3d 414, cert. denied, 305 Conn. 915, 46 A.3d 171 (2012).

Motions to withdraw guilty pleas are governed by Practice Book §§ 39-26 and 39-27. Practice Book § 39-26 provides in relevant part: "A defendant may withdraw his . . . plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his . . . plea upon *proof* of one of the grounds in [Practice Book §] 39-27 . . . ." (Emphasis added.) Practice Book § 39-27 (4) provides, in turn, that a defendant may withdraw his guilty plea after acceptance if "[t]he plea resulted from the denial of effective assistance of counsel. . . ." "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the

finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." (Internal quotation marks omitted.) *United States* v. *Doe*, 537 F.3d 204, 211 (2d Cir. 2008).

We first note that the plain language of Practice Book § 39-26 expressly imposes limitations upon a defendant's ability to withdraw his guilty plea after it has been accepted. Although a defendant may withdraw his guilty plea "as a matter of right until the plea has been accepted," after a guilty plea is accepted, the defendant's right to withdraw his plea is restricted to a narrow window of time. Practice Book § 39-26. After acceptance, but before the imposition of sentence, the trial court is required to permit a defendant to withdraw his guilty plea under Practice Book § 39-26 only "upon proof of one of the grounds in [Practice Book §] 39-27." Once a defendant has been sentenced, he no longer maintains a right to withdraw his guilty plea. Practice Book § 39-26. Furthermore, we emphasize that Practice Book § 39-26 requires the trial court to grant the defendant's motion to withdraw his guilty plea only "upon *proof*" of one of the grounds in Practice Book § 39-27. (Emphasis added.) This language indicates that the defendant bears the burden to present facts sufficient to persuade the trial court that his guilty plea should be withdrawn at this point in the proceedings.

We further observe that there is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea. "The rules of statutory construction apply with equal force to [our] rules [of practice]. . . . It is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them." (Citation omitted; internal quotation marks omitted.) *State* v. *Lameirao*, supra, 135 Conn. App. 322–23. A review of related rules of practice reveals that when the judges of the Superior Court intend to impose an affirmative duty on the trial court to conduct an inquiry of the defendant, they know how to do so. Specifically, unlike Practice Book §§ 39-26 and 39-27, Practice Book §§ 39-19 and 39-20,[7] which govern the acceptance of a defendant's guilty plea, explicitly mandate that the trial court "[address] the defendant personally . . . ." Practice Book § 39-20 also uses the following plain language to order the trial court to conduct a specific inquiry: "The judicial authority *shall also inquire* as to whether the defendant's willingness to plead guilty . . . results from prior discussions between the prosecuting authority and the defendant or his or her counsel." (Emphasis added.) Therefore, it would be improper for this court to engraft language requiring trial courts to affirmatively

investigate the basis of a defendant's motion to withdraw his guilty plea onto our rules of practice. The task of creating such a requirement properly lies with the judges of the Superior Court, not this court.[8] See *State* v. *Obas*, 320 Conn. 426, 436, 130 A.3d 252 (2016) (noting that "[i]n the absence of any indication of the legislature's intent concerning this issue, we cannot engraft language onto the statute for [i]t is not the function of the courts to enhance or supplement a statute containing clearly expressed language" [internal quotation marks omitted]); *State* v. *Baker*, 141 Conn. App. 669, 672, 62 A.3d 595 (noting that " '[l]anguage directing the trial court to "address the defendant personally" could easily have been included in the original text of [Practice Book] § 43-10 [3] had that been the intention of the judges of the Superior Court in adopting the rule' "), cert. denied, 308 Conn. 950, 67 A.3d 292 (2013).

In the present case, despite the fact that, at the outset of the sentencing hearing, defense counsel informed the trial court that the defendant had expressed to him "concerns over the manner in which he was represented," at no point during the proceedings did the defendant or his counsel cite facts or present evidence as to how or why counsel's representation was allegedly ineffective. At the time he made an oral motion to withdraw the defendant's guilty plea, it was incumbent upon defense counsel to provide the trial court with specific reasons to support the motion, but he failed to do so. The defendant offers no authority, and we know of none, that mandates a trial court to conduct an inquiry into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant raises general "concerns" about his attorney's representation and proffers no facts in support of his motion. In fact, our case law requires that a defendant "show a plausible reason for the withdrawal" of a guilty plea; *State* v. *Hall*, supra, 303 Conn. 533; and "allege and provide facts" that warrant a trial court's consideration of his motion. *State* v. *Carmelo T.*, supra, 110 Conn. App. 549; see also *State* v. *Crenshaw*, 210 Conn. 304, 311–12, 554 A.2d 1074 (1989) (affirming trial court's denial of defendant's motion to withdraw guilty plea, reasoning that "[i]t [was] not enough for the defendant to claim that he was told what to say by his lawyer" without providing any facts or evidence in support of motion [internal quotation marks omitted]).

The defendant further claims that the Appellate Court improperly concluded that "[n]either the defendant nor his attorney were denied the opportunity to present a basis for a plea withdrawal." *State* v. *Anthony D.*, supra, 151 Conn. App. 119. Specifically, the defendant contends that the situation at issue in the present case is similar to the one the Appellate Court faced in *State* v. *Morant*, 13 Conn. App. 378, 536 A.2d 605 (1988). The defendant concedes that, unlike in *Morant*, the trial court in the present case did not direct the defendant

to stop speaking. The defendant, however, asserts that he was denied the opportunity to adequately present the factual basis for his motion to withdraw his guilty plea as a result of the trial court's statement at the sentencing hearing that if the defendant wished to "claim at a time after that this was ineffective [assistance] or somehow coerc[ive]" he could do so in a habeas proceeding.[9] We disagree, and find *Morant* inapplicable to the present case.

In *Morant*, "immediately after the defendant was sentenced but before the close of the sentencing proceeding the defendant informed the court that he had not entered his plea on his own 'recognition' " and that "he had been 'on a pressure force to plead guilty.' " *State* v. *Morant*, supra, 13 Conn. App. 384. When the defendant attempted to further explain his claim to the sentencing court, the court interrupted him, stating that he could " 'take that up with [his] next attorney if [he] want[ed]' " and that such a claim was " 'not appropriate' " at the time. Id., 382. When the defendant attempted to speak to the court again, "[t]he court responded with a thinly veiled threat telling the defendant that if he heard anymore from him the court might be sorry that it sentenced him to only ten years suspended after seven." (Emphasis omitted.) Id., 385. The Appellate Court concluded that "the statements made by the defendant [were] sufficient to require the holding of an evidentiary hearing because the trial court effectively precluded the defendant from making any more specific allegations of fact." Id.

We agree with the Appellate Court that the present case is factually distinct from *Morant*. See *State* v. *Anthony D.*, supra, 151 Conn. App. 118. In the present case, immediately following the defendant's oral motion, made through counsel, to withdraw his guilty plea, the trial court specifically stated that it did "not believe that there [was] any factual basis for" the motion. The court then asked defense counsel: "[A]s an officer of the court, do you know of any defect in that plea canvass that would allow the court to, in fact, take back the plea at this time?" We disagree with the dissent's suggestion that this inquiry by the trial court "limited [defense counsel] to any allegations regarding the adequacy of the plea canvass." See footnote 7 of the dissenting opinion. These statements by the trial court were an invitation to defense counsel to present a factual basis for the motion and defense counsel was free to answer the trial court's question as he wished. Rather than present such support, defense counsel merely stated: "Your Honor, I think that I need to be precise in my language. The canvass itself I think was quite thorough."

Although the defendant attempts to equate the trial court's statement at the sentencing hearing that if the defendant wanted to "claim at a time *after* that this

was ineffective [assistance] or somehow coerc[ive]" he could do so in a collateral habeas proceeding to the statements made by the court in *Morant*, we are not persuaded. (Emphasis added.) In *Morant*, the defendant and defense counsel repeatedly attempted to explain the basis of the motion to withdraw, but the trial court interrupted and affirmatively prevented them from proffering specific facts in support of the motion. *State* v. *Morant*, supra, 13 Conn. App. 382. Here, in contrast to the situation in *Morant*, at no point in the proceedings did the trial court cut short the defendant's explanation of the basis of his motion or direct him to stop talking. We interpret the trial court's statement as an attempt to convey to the defendant that there were no facts before it that would justify the withdrawal of his plea at that time, but that he remained entitled to make a claim of ineffective assistance of counsel following the sentencing hearing.[10]

Moreover, we do not examine the dialogue between defense counsel and the trial court at the sentencing hearing in isolation, and we find the particular circumstances of the present case relevant to our analysis. The record reveals that the trial court's canvass of the defendant at the change of plea hearing was thorough and presented the defendant with numerous opportunities to voice any concerns he may have had with his attorney's representation of him, or to inform the court that the sentence was inconsistent with the explanation of the plea agreement that his attorney had given him. During the plea canvass, the defendant indicated that he had spoken to his attorney about his decision to plead guilty and that the sentence the court was to impose corresponded with his understanding of the plea agreement. When asked whether anyone had forced or threatened him to plead guilty and whether he had been induced to plead guilty by any promises not contained in the plea agreement, the defendant responded in the negative. The defendant further indicated that he was pleading guilty under the *Alford* doctrine because he acknowledged that there was a chance that he would be convicted of additional offenses and would face a greater sentence if he decided to proceed with his trial. The trial court specifically asked both defense counsel and the state's attorney whether they knew of any reason why the plea should not be accepted, and they both replied that they did not. Finally, before accepting the defendant's plea, the trial court asked the defendant one last time[11] whether he understood the plea agreement, to which he replied that he did, and the trial court also made a specific finding that the defendant "had the assistance of competent counsel."[12] Thus, despite the ongoing dialogue between the defendant and the trial court during the plea canvass, the hearing concluded without the defendant alluding to any perceived flaw in the entry of his guilty plea.

The defendant nevertheless claims that the trial court

had been given notice that the defendant was dissatisfied with his attorney's representation of him at the change of plea hearing when the trial court asked whether he had any questions for his attorney and he responded that "nothing that I ask is gonna change anything." We are not persuaded. We find the defendant's statement to be ambiguous, at best, especially when taken in the context of the status of his case. Given the fact that the defendant changed his plea well after his trial had begun, during which the victim had testified extensively, and immediately after his motion to suppress his incriminating statement to the police had been denied, the defendant's statement could reasonably be interpreted as an expression of the defendant's acknowledgment of the strength of the state's evidence against him and the risk associated with proceeding with his trial.[13] Furthermore, the record reveals that if the defendant were dissatisfied with his attorney's representation of him, he had a clear opportunity to articulate to the court that he was not being adequately represented by his current attorney and to request the appointment of new counsel at this point in the plea canvass. The defendant, however, did not avail himself of this opportunity, and we cannot expect trial judges to be seers. See *Nicks* v. *United States*, 955 F.2d 161, 169 (2d Cir. 1992) (noting that "[i]n determining whether to hold a competency hearing, the applicable standard does not contemplate that a judge be omniscient, but simply that a trial court rule on the objective facts of which it has knowledge").

Additionally, we note that, procedurally, neither the defendant nor his attorney requested an evidentiary hearing or moved for a continuance. The record also discloses that the trial court continued the sentencing until ten days after the plea hearing for purposes related to the defendant's parole. If the defendant had concerns relating to his guilty plea, he had adequate time to develop a factual basis to support his motion to withdraw his guilty plea. The defendant, however, failed to do so. Furthermore, when given an opportunity to speak before the imposition of sentence, the defendant declined to say anything.[14] Thus, in light of the foregoing circumstances, we conclude that, contrary to the dissent's claim, the defendant was afforded a reasonable opportunity to satisfy his burden of presenting a factual basis in support of his motion to withdraw his guilty plea.

Finally, we recognize that the administrative need for judicial expedition and certainty is such that trial courts cannot be expected to inquire into the factual basis of a defendant's motion to withdraw his guilty plea when the defendant has presented no specific facts in support of the motion. To impose such an obligation would do violence to the reasonable administrative needs of a busy trial court, as this would, in all likelihood, provide defendants strong incentive to make vague assertions

of an invalid plea in hopes of delaying their sentencing. Because, as this court has previously stated, "the guilty plea and the often concomitant plea bargain are important components of [the] criminal justice system"; (internal quotation marks omitted) *State* v. *Revelo*, 256 Conn. 494, 505, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001); such a practice would undermine the "strong interest in the finality of guilty pleas." (Internal quotation marks omitted.) *United States* v. *Doe*, supra, 537 F.3d 211; see also id. ("[t]he standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice" [internal quotation marks omitted]). As previously noted in this opinion, we emphasize that, at the defendant's request, the trial court in the present case interrupted the trial in order to conduct a canvass of the defendant pursuant to Practice Book § 39-19 and to accept the defendant's guilty plea. See footnote 7 of this opinion; see also *State* v. *Anthony D.*, supra, 151 Conn. App. 114. At the time the defendant changed his plea, the state had presented six witnesses, including the then fifteen year old victim, who had been called to testify at length about the defendant's sexual abuse of her. See *State* v. *Anthony D.*, supra, 111. Therefore, on the basis of the facts of the present case, for the trial court to have granted the defendant's motion to withdraw his guilty plea without any factual support for the motion on the record would have greatly "delay[ed] and impair[ed] the orderly administration of justice." *United States* v. *Doe*, supra, 211.

We conclude that, without specific concerns or facts before it to justify the withdrawal of the defendant's guilty plea at sentencing, the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea without conducting a further inquiry into the underlying basis of the defendant's motion. Accordingly, the Appellate Court properly concluded that "the defendant presented no basis for further inquiry by the court." *State* v. *Anthony D.*, supra, 151 Conn. App. 119.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, ZARELLA and ESPINOSA, Js., concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's decision to deny the defendant's oral motion to withdraw his plea due to ineffective assistance of counsel without conducting a further inquiry?" *State* v. *Anthony D.*, 314 Conn. 918, 100 A.3d 407 (2014).

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed.

2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Pentland*, 296 Conn. 305, 308 n.3, 994 A.2d 147 (2010).

[3] We note that although defense counsel also made a motion for appointment of new counsel, the trial court did not rule on this motion and the defendant did not raise this issue on appeal.

[4] The defendant also raises due process and ineffective assistance of counsel claims pursuant to article first, § 8, of the constitution of Connecticut. "Because the defendant has not set forth a separate analysis of his claim[s] under the state constitution or asserted that our state constitution affords him greater protections with regard to his claim[s] than its federal counterpart, we confine our analysis to the defendant's federal constitutional claim[s]." *State* v. *Roger B.*, 297 Conn. 607, 611 n.7, 999 A.2d 752 (2010).

[5] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

Practice Book § 39-27 provides: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

[6] The defendant further claims that the trial court's failure to advise the defendant during the plea canvass that he "ha[d] the right to plead not guilty or to persist in that plea" in violation of Practice Book § 39-19 (5) rendered his plea involuntary. We disagree. "This court has held repeatedly that . . . § 39-19 requires only substantial compliance." (Footnote omitted.) *State* v. *Ocasio*, 253 Conn. 375, 378, 751 A.2d 825 (2000). The trial court in the present case substantially complied with the requirement of § 39-19 (5) when it explained the nature of the *Alford* doctrine and asked the defendant whether he acknowledged that there was a likelihood that he would be convicted of additional offenses and would face a greater sentence if he decided to proceed with his trial. Furthermore, the trial court specifically told the defendant that by pleading guilty he was waiving certain constitutional rights, including the right to plead not guilty and to have the state prove his guilt beyond a reasonable doubt.

[7] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Practice Book § 39-20 provides: "The judicial authority shall not accept

a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

[8] The dissent notes that "the majority's reasoning that a trial court has no affirmative obligation to inquire as to the basis for the claim makes little sense in the present case, in which the trial court did affirmatively inquire as to the basis for a claim of a defective plea, even though that claim had not been made . . . ." See footnote 7 of the dissenting opinion. As previously noted in this opinion, in the present case, the trial court did not have an affirmative obligation to inquire as to whether there was any defect in the plea canvass that would invalidate the guilty plea. However, because Practice Book § 39-19 sets forth inquiries that the trial court is required to make before accepting a defendant's guilty plea, it was reasonable for the trial court to question whether there was a problem with its canvass of the defendant. See *State* v. *Lage*, 141 Conn. App. 510, 526, 61 A.3d 581 (2013) (noting that "[e]xcept for those inquiries which are constitutionally mandated or are required by our rules; [Practice Book §§ 39-19 through 39-21]; the court is not obliged to assume the role of the defendant's counselor" [internal quotation marks omitted]). The fact that the trial court took it upon itself to inquire as to the sufficiency of the plea canvass does not change the fact that it was not affirmatively required to inquire into the basis of the defendant's motion to withdraw his guilty plea.

[9] The dissent concludes that "the trial court reasoned, mistakenly, that a claim of ineffective assistance was not a proper basis for a plea withdrawal." We find no support in the record for finding that the trial court misunderstood Practice Book § 39-27. The dissent seems to base its understanding that the trial court was mistaken on the fact that the trial court said that the defendant could make a claim of ineffective assistance of counsel in a collateral habeas proceeding and that such a statement demonstrates that the trial court believed that a habeas proceeding was the *only* proper forum for a claim of ineffective assistance. This is a logical leap that the majority will not make. It is too far a stretch to assume the trial court was under a misimpression of the grounds for withdrawal contained in § 39-27 based on its aforementioned comment.

Moreover, even if the trial court had been under a misimpression that a claim of ineffective assistance of counsel was not a proper basis for the withdrawal of a guilty plea, this would not change the fact that, in the present case, the only basis presented by defense counsel in support of the defendant's motion to withdraw his guilty plea was a conclusory statement that the defendant had "concerns" relating to his legal representation. As the dissent acknowledges, the case law of this state makes clear that the burden is upon the defendant to "allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]." (Internal quotation marks omitted.) *State* v. *Carmelo T.*, supra, 110 Conn. App. 549. The defendant failed to present such facts or any evidence in support of his motion to the trial court. Notably, defense counsel did not cite to or reference § 39-27 (4), or any rule of practice for that matter, when he moved to withdraw the defendant's guilty plea. The failure of the defendant and defense counsel to present a factual basis for the motion was the sole reason for the trial court's denial of the defendant's motion to withdraw his guilty plea. Thus, even if we were to assume that the trial court had been mistaken as to the allowable grounds for withdrawal of a guilty plea, the deficiencies in the defendant's motion remain.

[10] The dissent asserts that the trial court in the present case "foreclosed the defendant from providing any specific allegations of fact to support the claim." (Emphasis omitted.) See footnote 9 of the dissenting opinion. As we have explained previously in this opinion, unlike in *Morant*, there is no evidence in the record that the trial court affirmatively precluded the defendant or defense counsel from stating a factual basis in support of the motion to withdraw the guilty plea. Defense counsel had the opportunity at this point in the proceedings to explain to the trial court that, while there was no defect in the plea canvass, the defendant had specific facts to support his claim that he had received ineffective assistance of counsel. Defense counsel failed to provide the trial court with those facts or make any further statement as to the defendant's "concerns."

[11] Throughout the entire colloquy between the trial court and the defendant, the trial court repeatedly asked whether the defendant understood

the charge and the terms of the plea agreement and the defendant affirmed four times that he did. When the defendant indicated that he did not understand that, as a result of his conviction, he would be required to register as a sex offender for his lifetime, the trial court gave a thorough explanation of what that requirement and sex offender parole entailed.

[12] We note that the defendant was canvassed and sentenced by the same trial court judge. Consequently, the sentencing court was cognizant of the defendant's demeanor and responses to the court's inquiries during the plea proceeding. Furthermore, the trial court was also familiar with defense counsel's demeanor and representation of the defendant.

[13] We further note that the procedural posture of the defendant's case supports the trial court's denial of the defendant's motion to withdraw his guilty plea. Given the status of the case and the lack of an asserted factual basis for the defendant's motion to withdraw, it was reasonable for the trial court to infer that the motion was made as a dilatory tactic rather than for the purpose of obtaining a trial.

[14] The dissent claims that the defendant's failure to present a factual basis for his motion at this point in the proceedings should not be held against him because "the defendant very reasonably could have thought that the ineffective assistance of counsel matter was closed" at the time. See footnote 6 of the dissenting opinion. Although that may have been the case, we note that the defendant failed to express his dissatisfaction with defense counsel on the record, *both before and after* the trial court's denial of his motion to withdraw his guilty plea.